Commonwealth *v.* DeWan, Appellant.

Argued March 26, 1956. Before Rhodes, P. J., Hirt, Gunther, Wright, Woodside, Ervin, and Carr, JJ.

*H. Lester Haws,* with him *Haws & Burke,* for appellant.

*Nicholas H. Larzelere,* Assistant District Attorney, with him *Bernard E. DiJoseph,* and *J. Stroud Weber,* District Attorneys, for appellee.

OPINION BY GUNTHER, J., July 17, 1956:

Appellant was indicted and convicted under the Act of May 27, 1949, P. L. 1900, section 1, added to The Penal Code of 1939, 18 PS §4418, for malicious loitering or malicious prowling at the Nurses Home of Montgomery County Hospital, Norristown, Pa. The trial was conducted before Honorable George C. Corson without a jury, the right to a jury trial having been previously waived. From a verdict of guilty and a sentence of thirty days imprisonment in the Montgomery County Prison, appellant has filed this appeal.

On the night of March 12, 1954, at about 7:15 P.M., two nurses were disturbed by noises in a narrow private passageway running along the rear of the nurses' home between the building and the fence line of the property next door. At this point there was a tree just on the other side of the home property line high enough to enable one to look into the windows of the second and third floors of the nurses' home. They heard the cracking of dead twigs on the outside of the window. One of the nurses went to the adjoining bathroom from which she observed the figure of a man in front of the

nursing arts laboratory door. She testified that he then darted around the corner of the building. About the same time, one of the dieticians also heard sounds in the passageway, and a technician, who was in her room with the window partly opened, said she also heard a thud and later on the firing of a shot.

The police were called immediately by telephone and a radio car arrived at the scene about 7:30 P.M. One policeman proceeded to one end of the passageway and the other covered the opposite end. The first policeman covering the passageway nearest to the tree heard a thud and saw the figure of a man at the base of the tree. When he called out to halt, the figure ran toward the other end of the passageway. The officer fired a warning shot into the air but the fleeing man continued running and, while so fleeing, ran into the arms of the other officer approaching from the opposite end of the passageway. The man apprehended was the appellant, Joseph DeWan. His first statement to the police upon apprehension was that he be given a break because if he went down to the station again, he would go to jail. Apparently this was in reference to appellant's prior conviction of open lewdness and indecent exposure for which he received probation.

At the time of arrest, no other person appeared to be in the vicinity of the nurses' home. The tree at the base of which appellant was first seen by the police officer was opposite the window of one of the nurses' rooms occupied for dwelling purposes. The officer testified that the thud he heard apparently was caused by someone jumping down from the tree opposite the window of the nurse who first heard the commotion outside. The officer did not lose sight of the fleeing form from the time of flight to the time he ran into the arms of the second officer. The fright from the shot fired

and the flight apparently resulted in such a loss of body functional control as to cause a feculence in his trousers at the time of his apprehension.

Appellant testified that he left his home sometime after 7:15 P.M. for the purpose of getting a haircut but that the two barbershops visited were about to close. He stated he was on his way home and that he cut through the passageway of the nurses' home, as a short-cut, when met the officers; that upon the shot being fired, he became frightened and ran.

At the time the nurses were alarmed by the commotion outside, it was dark and no one was able to positively identify appellant as the person who was seen prowling around.

Appellant contends here that there wasn't sufficient identification required to connect him with the crime and that the *corpus delicti* was not proved.

The Act of May 27, 1949, P. L. 1900, section 1, 18 PS §4418, provides:

"Whoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor . . ."

Black's Law Dictionary (3rd ed.) defines loitering "To stand around or move slowly about; to spend time idly; to saunter; to delay; to linger; to lag behind." The term "prowl" is defined "to rove or wander over in a stealthy manner." Webster's International Dictionary (2nd ed.) defines the verb loiter "to be slow in moving; delay, linger, saunter; lag behind." The term "prowl" is defined "to move about or wander stealthily, as a wild beast seeking prey; to pace or roam about furtively." These terms have well recognized meanings in ordinary use and, in absence of legislative definitions,

the meaning of words are ascribed their ordinary definitions.

This Act was obviously intended to punish not only those persons who at night are bent on peeping into the private affairs of citizens in their dwellings, but also those individuals who are found at or near dwellings without lawful purpose or reason and whose presence can only be explained in some preparation for or attempt at illegality or crime. The mischief prohibited is that intentional act, without legal justification or excuse, which has as its purpose injury to the privacy, person or property of another. It is that act which has for its purpose improper motive, evil design, depravity or perversion that is prohibited. Of necessity, therefore, each act must be considered under the peculiar facts and circumstances which give rise to the accusation.

Viewing the purpose of the Act of 1949, supra, we are satisfied that the *corpus delicti* of this crime has been established. The definition of *corpus delicti* includes only (1) the occurrence of the specific kind of injury charged, and (2) somebody's criminality as the source of the injury. *Commonwealth v. Ricci*, 177 Pa. Superior Ct. 556, 112 A. 2d 656; *Commonwealth v. Winter*, 174 Pa. Superior Ct. 35, 98 A. 2d 221; *Commonwealth v. Ferguson*, 162 Pa. Superior Ct. 199, 56 A. 2d 360; *Commonwealth v. Gardner*, 282 Pa. 458, 128 A. 87. Proof of the accused's agency as being the perpetrator of the crime, while an essential requisite in order to convict, is not an element of *corpus delicti*. *Commonwealth v. Ricci*, supra; *Commonwealth v. Eng Chuing*, 150 Pa. Superior Ct. 445, 28 A. 2d 710.

By the very nature of these types of cases, direct identification is rarely possible. Unless the accused is caught right in the act, the evidence as to identity must, in varying degree, be circumstantial. Circumstantial

evidence, if believed, is sufficient to sustain conviction. *Commonwealth v. Cerzullo et al.*, 175 Pa. Superior Ct. 330, 104 A. 2d 179.

Considering the fact that appellant waived his right to trial by jury, it became the duty of the trial judge to evaluate the evidence as to identity, together with all other evidence produced, to determine guilt or innocence. In reviewing the record, the evidence, the fact that appellant was in constant view from the time he apparently jumped from the tree until his apprehension, his flight, his statements made to the officer at the time of apprehension and his physical instability, we cannot say that the verdict was against the weight of the evidence and not of such character as to establish guilt beyond a reasonable doubt.

The judgment of the court below is affirmed.