Commonwealth *v.* Nicholls, Appellant.

Argued December 15, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Jean B. Green,* Public Defender, for appellant.

*Richard A. Devlin,* Assistant District Attorney, with him *Henry T. Crocker,* Assistant District Attorney, and *Richard S. Lowe,* District Attorney, for Commonwealth, appellee.

412 

OPINION BY MONTGOMERY, J., March 24, 1966:

These appeals are from judgments of sentence following verdicts of guilty returned by a jury on two indictments (765 and 767 of 1965) charging burglary and larceny and a third indictment (No. 769 of 1965) charging loitering and prowling at night.

Briefly the facts are as follows. On March 31, 1965, at 8:30 p.m. appellant Robert Nicholls and a companion were observed at the front door of a home in Cheltenham Township, Montgomery County, Pennsylvania, ringing the doorbell, trying the front door and looking in a window immediately adjacent to the front door. Another man was observed sitting in an automobile parked in front of the home. The police officer who had observed the three men questioned them as to their presence there and, not receiving an answer that satisfied him, radioed for another officer; meanwhile detaining the three men. The other policeman arrived shortly thereafter and recognized one of appellant's companions as a known burglar. The two officers thereupon placed appellant and his companions under arrest for "loitering and prowling at night time". Following the arrest the first officer without the knowledge of the other made a search of the interior of the car for a gun or other weapon and discovered in the glove compartment thereof certain articles of jewelry which were later determined to be the fruits of a burglary that had not as of that time been reported. After the three arrested men had been taken to the police station the second officer secured a warrant to search the car and in executing it discovered the articles the first officer had seen in the glove compartment and also other purloined goods in the trunk of the car. Before this search was made a general question was asked as to the rightful possessor of the automobile and the appellant volunteered the answer that he was, having rented it.

A timely motion to suppress the evidence found in the car, i.e., the stolen articles, was denied and appellant's convictions of burglary were based largely on this evidence. The propriety of the denial of this motion and the acceptance of the stolen property in evidence is the main issue in this appeal. The admission of appellant's statement that he was the possessor of the car is the only other issue before us. It is appellant's contention that his arrest was unlawful and therefore the subsequent searches of the automobile, including the one made in execution of the search warrant, were illegal.

Section 418 of The Penal Code of June 24, 1939, P. L. 872, §418, as amended, 18 P.S. §4418, provides that, "Whoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor . . ." In *Commonwealth v. Clinton*, 391 Pa. 212, 137 A. 2d 463 (1958), in dealing with this crime, our Supreme Court enumerated its three elements as (1) a loitering or prowling; (2) at night; (3) around a dwelling house. The latter two elements are present in this case without question. It is only the first that is questioned by appellant. He contends his actions on that night do not meet the definition of loitering or prowling. We disagree. In *Commonwealth v. DeWan*, 181 Pa. Superior Ct. 203, 208, 124 A. 2d 139, 141 (1956), we set forth various definitions of the words "loitering" and "prowl" and said: "This Act was obviously intended to punish not only those persons who at night are bent on peeping into the private affairs of citizens in their dwellings, but also those individuals who are found at or near dwellings without lawful purpose or reason and whose presence can only be explained in some preparation for or attempt at illegality or crime. . . . Of necessity, therefore,

each act must be considered under the peculiar facts and circumstances which give rise to the accusation." See also *Commonwealth v. Williams,* 185 Pa. Superior Ct. 312, 137 A. 2d 903 (1958). In the present case the action of appellant in trying the door, and peeping in the window of a dwelling house in the nighttime without lawful business with the owner thereof, and in the company of a known burglar amply justified the appellant's arrest and supports his conviction.

The arrest being lawful, the reasonableness of the subsequent searches remains to be determined. The facts and circumstances in each case determine the reasonableness of a search. *Commonwealth v. Cockfield,,* 411 Pa. 71, 190 A. 2d 898 (1963), cert. denied, 375 U.S. 920, 84 S. Ct. 265, 11 L. Ed. 2d 164. The standard of reasonableness is still for state courts to determine, *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304 (1963), cert. denied, 375 U.S. 910, 84 S. Ct. 204, 11 L. Ed. 2d 149; and it is to be determined under the total atmosphere of the case. *Commonwealth v. Scull,* 200 Pa. Superior Ct. 122, 186 A. 2d 854 (1962), cert. denied, 376 U.S. 928, 84 S. Ct. 670, 11 L. Ed. 2d 623.

*Commonwealth v. Pincavitch,* 206 Pa. Superior Ct. 539, 214 A. 2d 280 (1965), relied on by appellant, is clearly distinguishable for the reason that in that case there was no lawful arrest to justify a search without a warrant nor was there a warrant, as in the present case. *Commonwealth v. Wright,* 415 Pa. 55, 202 A. 2d 79 (1964), also cited by appellant, is not in point since it related to the admission of evidence previously suppressed.

This case has an exceptional feature. The first search made by the original police officer without the knowledge of the second was limited to the interior of the automobile, particularly the glove compartment, wherein was found some of the stolen items. How-

ever, they were not seized at that time. It was not until after the search warrant was procured that the car was searched thoroughly, including the trunk, and the articles in the trunk as well as in the glove compartment seized. Appellant does not question the propriety of the search warrant or its execution except insofar as it was effected by the search made by the first officer. It is appellant's contention that the first search was unlawful and therefore under the "fruit of the poison tree" doctrine as enunciated by the Supreme Court of the United States in *Silverthorne Lumber Co., Inc. v. United States,* 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920), and restated in *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), the second search under the search warrant was also illegal. This doctrine prohibits the use of evidence properly obtained if the knowledge of that evidence is based upon other evidence which had previously been improperly obtained.

We do not question the correctness of the doctrine as stated by appellant's counsel in his brief but we fail to see its application to the present situation wherein the issuance of the search warrant and the subsequent search and seizure of the stolen property from appellant's car made thereon were not predicated on any information secured from the first officer (Bates) as a result of his search, whether that search was lawful or unlawful.[1] On this point we find the following statement from the United States Supreme

---

[1] We quote from appellant's brief: "Since we are dealing with the question of reasonableness as it relates to an arrest and as it relates to a search, the testimony of Sgt. Lynch is crucial. He said that to his knowledge no search was made until the search warrant was obtained and in fact, he admitted that there was time to get the search warrant and in his opinion that was the proper way to go about the search. What he did not know was that Officer Bates had already searched the car without the benefit of a warrant."

Court in *Nardone v. United States,* 308 U.S. 338, 341, 60 S. Ct. 266, 84 L. Ed. 307 (1939): "Here, as in the Silverthorne case, the facts improperly obtained do not 'become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it' simply because it is used derivatively." Also see *Rouda v. United States,* 10 F. 2d 916 (2d Cir. 1926), wherein it was held that a search warrant was valid even though there had been an unlawful entry, if based on facts known by the officer before making the entry. The reasoning is logical; the government should not benefit from information unlawfully gained. Such was not the present case. We conclude, therefore, that the evidence secured by virtue of the search warrant was lawfully seized and admissible in evidence. The validity of the first officer's search need not be determined under the circumstances since it did not affect the seizure.

The final alleged error is with regard to the introduction in evidence of the statement attributed to appellant that he was the possessor of the car, having rented it. Appellant argues that this statement was secured from him following his arrest at a time when he was not represented by counsel and before he had been advised of his right to counsel or had been advised that he might remain silent. The record does not show that appellant asked for counsel at that time nor does he contend in his brief that he did so. However, such a request is not necessary to protect one's constitutional rights. *Commonwealth v. Negri,* 419 Pa. 117, 213 A. 2d 670 (1965).

The statement, aforesaid, was made by the appellant under the following circumstances. Following his arrest for loitering and prowling he and his companions were removed to the police station. While he

was there, a burglary of the home of a Dr. Schartz was reported. Following the receipt of this report and the procurement of a search warrant to search the car, the three prisoners were asked collectively who was responsible for renting the vehicle and this appellant volunteered the information that he had rented it. At this time the police had other information showing that it was a rented car.

Following the receipt of appellant's answer he was asked to accompany the officers in executing the search warrant and. he complied. It was not until after the search and seizure of the jewelry and other articles (furs) that appellant was charged with the crimes of burglary and larceny. Therefore, at the time the statement was made those crimes were in the investigatory stage of the proceeding and did not require the protection of appellant's constitutional rights referred to in *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964), and *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). Cf. *Commonwealth v. Negri*, supra, for an analysis of *Escobedo*.[2]

---

[2] "What, then, is the purpose of the ruling in *Escobedo?* Crooker v. California [357 U.S. 433, 78 S. Ct. 1287, 2 L. Ed. 2d 1448], and Cicenia v. LaGay, supra [357 U.S. 504, 78 S. Ct. 1297, 2 L. Ed. 2d 1523], protect the accused from any prejudice arising out of the failure to afford counsel at an accusatory interrogation. Jackson v. Denno, supra, protects the accused from any use of a coerced confession. And the Fifth Amendment does not proscribe, even to federal courts, the use of voluntarily made self-incriminating statements, but only condemns *compulsory* self-incrimination. Therefore, the only function left to the ruling in *Escobedo* is to prevent the *possibility of prejudice* which an accused might not be able to prove at trial."

In our present case we have found no coerced confession or compulsory self incrimination. Appellant was not prejudiced by the failure to afford him counsel at the time he admitted he had rented the automobile.

418

Furthermore, neither the automobile nor the statement had any relation to the crime of loitering and prowling for which appellant had been arrested. His participation in that crime was by his presence and activities on the premises of Mr. and Mrs. Jerry Zaslow, the owners of same. Therefore, such statement was neither a confession nor an incriminating statement that in any way prejudiced appellant in that case.

We note also that Judge GROSHENS, who tried this case, properly conducted a separate hearing in the absence of the jury to satisfy himself that appellant's rights were not being violated and to avoid prejudice to the appellant in case the statement might prove inadmissible, before admitting it in evidence.

We are satisfied that the verdicts of guilty are fully supported by the evidence and that appellant had a fair trial with full observance of his legal rights.

Judgments affirmed.