Opinion by
 

 Jacobs, J.,
 

 The defendants, Leon D. Hargrave and James Hermit Hill, appeal from judgments of sentence imposed upon each after a jury convicted them of burglary, conspiracy to commit burglary, loitering and prowling at night time and possession of burglary tools.
 

 About 2:00 a.m., on March 28, 1966, an officer of the Lower Moreland Township Police Department, Montgomery County was on routine patrol when he observed a sedan bearing Maryland license plates proceeding in a westerly direction on Welsh Road in the township. A few minutes later he saw the same vehicle as it came east on Welsh Road. The officer drove into an open field and extinguished his lights. As he watched, the car proceeded in a westerly direction again on the same road, each time passing the Bethayres Valley Apartments. The vehicle then turned around, proceeded east, pulled into an entrance of the apartments and stopped on a parking lot in front of one of the buildings. As the officer proceeded toward this parking lot he observed the driver of the vehicle, Hargrave, get out, walk to the back of the car and look up and down Welsh Road while the passenger, Hill, got out and walked up to the entrance of the apartment building vestibule and went inside. The officer then drove his vehicle to the rear of the defendants’ automobile and defendant Hill, who had entered the apartment house lobby, immediately came out. He had spent about fifteen seconds in the building.
 

 The officer examined the defendants’ operator’s permits and shined his flashlight into the back window of the defendants’ vehicle, where he observed a 36 inch pick-axe handle and a lug wrench on the floor. Moving toward the front of the vehicle, where the passenger’s door was standing open, the officer shined the flashlight into the car. He observed two 25^ money
 
 *170
 
 wrappers lying on the floor and a blue bag protruding from under the front seat. He reached down and pulled it forward, observing that the bag was full of loose coins.
 

 ;• . At this point the assistance which the officer had radioed for arrived and the two officers ordered the defendants to stand in front of the police car and keep their hands in sight. They were taken into custody fqr loitering and prowling at night. One of the officers then took the keys from the ignition of the vehicle and opened the trunk, where he found a wastepaper can filled with coins, some loose and some in bags and wrappers, with six keys on top, a home-made device for making and cutting keys, and two packages of blank ACE lock-type keys. After patting the defendants down, the officers placed them in a police car and took them to police headquarters.
 

 The defendants were seated in separate places in the Station until the police chief arrived. Then they were asked, several questions, searched and put in cells. The arresting officer searched the patrol car and the station house area where the defendants had sat, for any items that may have been discarded by them. A newspaper was on the chair next to where Hill had been seated. ■ Inserted in one of the folds was a device which the officer identified as a lock set up. Its function was to measure the depth of the tumblers in an ACE type lock so that a key could be made to fit the lock. In a wastebasket not more than three feet from where Hargrave had sat the officer found, wadded in tissue paper, twenty-three small knife blades which the officer said were used in the key making machine to cut keys. At trial all these objects were introduced in evidence and it was shown that there were coin operated machines in the apartment building basement. The Commonwealth did not show what locks, if any,
 
 *171
 
 in the apartment could have been opened with this type of key making apparatus, or whether defendants knew or could have known that machines were located in the basement.
 

 The defendants urge that the items found in the car were illegally seized and therefore should have been excluded from evidence at trial. We find, however, that the arrest and search were lawful. An officer may arrest without a warrant where he has probable cause to believe that a misdemeanor is being committed in his presence. See
 
 Commonwealth v. Garrick,
 
 210 Pa. Superior Ct. 124, 232 A. 2d 8 (1967) (and authorities cited therein). The arresting officer’s observations of the defendants fully supported his belief that they were prowling around the apartment. They twice passed within fifty feet of the apartment on Welsh Road while he was within their view. On their third passage, the officer was out of sight and they turned around and came back to the apartment parking lot. Hargrave then stood at the rear of the car in the manner of a lookout as Hill entered the building. The relevant statute prohibits the malicious loitering or prowling at night around any place used for dwelling purposes. Act of May 27, 1949, P. L. 1900, §1, 18 P.S. §4418. Our court has taken the dictionary definition in determining whether conduct amounts to loitering and prowling. To prowl is to “roam in search or as if in search of whatever may be found: pace restlessly back and forth.” Webster’s International Dictionary (3d ed.);
 
 Commonwealth v. DeWan,
 
 181 Pa. Superior Ct. 203, 207, 124 A. 2d 139, 141 (1956). Defendants’ conduct was sufficient to give the observing officer probable cause to believe that defendants were prowling and that this offense was being committed. The arrest was therefore lawful. The search of the car and its trunk at the time and place of the lawful
 
 *172
 
 arrest of the occupants of that car may be sustained as incident to that lawful arrest. See
 
 United States v. Gorman,
 
 355 F. 2d 151, 155 (2d Cir. 1965);
 
 Adams v. United States,
 
 336 F. 2d 752 (D.C. Cir. 1964).
 

 The constitutional propriety of their seizure did not ipso facto make all these items admissible, however. Two containers of coins, amounting to more than 1800.00, found in the car were introduced into evidence by the Commonwealth, over objection, as tending to show that Hill entered the building with intent to break into and steal from the coin operated machines in the basement of the apartment house. The coins were not removed from the machines in the Bethayres apartment house and the Commonwealth made no effort to show the ownership of the coins or that they were the fruits of prior thefts or that the defendants had committed any prior offenses. Under such circumstances possession of the coins did not in any way tend to prove the defendants’ intentions and their admission was completely irrelevant.
 

 The admission of these coins was highly prejudicial to the defendants. The presence of the coins in the automobile would obviously create the suspicion that defendants had committed prior thefts and were embarked on a series of thefts. The Commonwealth apparently sought to foster that suspicion for, although the contents of one container had been removed, other coins (not those found in the car) were put in that container and put into evidence. The manner of defendants’ approach to the building, their possession on their persons and in their automobile of key making equipment and their attempts to dispose of key making tools all tend to show their plan to steal from the coin operated machines in the apartment basement. Although this was circumstantial evidence of intent it would, without reference to the coins, reasonably and
 
 *173
 
 naturally justify an inference of guilt and was of such volume and quantity as to overcome the presumption of innocence and satisfy the jury of defendants’ guilt beyond a reasonable doubt as required by our cases. See
 
 Commonwealth v. DelMarmol,
 
 206 Pa. Superior Ct. 512, 517, 214 A. 2d 264, 267 (1965). However, the inference of guilt undoubtedly was greatly strengthened by the defendants’ unexplained possession of a large amount of coins in denominations similar to those used in coin operated machines. In our opinion the introduction of this irrelevant material was so prejudicial to defendants as to entitle them to a new trial. See
 
 State v.
 
 Bray, 278 S.W. 2d 49 (Mo. App. 1955).
 

 Judgments reversed and new trials granted.
 

 Watkins and Montgomery, JJ., dissent and would affirm the lower court.