Commonwealth *v.* Watson et al., Appellants.

Argued September 15, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Martin A. Ostrow,* for appellants.

*James D. Crawford,* Assistant District Attorney, with him *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, November 12, 1969:

Judgment of sentence affirmed, and the defendants are directed to appear in the court below at such time as they may be there called, and that they be by that court committed until they have complied with the sentence, or any part thereof which had not been performed at the time the appeal was made a supersedeas.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellants were indicted for loitering and prowling. Act of June 24, 1939, P. L. 872, §418, as amended, 18 P.S. §4418.[1] Assisted by counsel,[2] they were tried be-

---

[1] Loitering and prowling is a misdemeanor, punishable by a fine not exceeding $1000 or imprisonment not exceeding one year or both. It has been considered an indictable offense. See *Commonwealth v. Clinton,* 391 Pa. 212, 137 A. 2d 463 (1958) ; *Commonwealth v. DeWan,* 181 Pa. Superior Ct. 203, 124 A. 2d 139 (1956) ; *Commonwealth v. Williams,* 185 Pa. Superior Ct. 312, 137 A. 2d 903 (1958) ; *Commonwealth v. Nicholls,* 207 Pa. Superior Ct. 410, 217 A. 2d 768 (1966) ; *Commonwealth v. Hargrave,* 212 Pa.

fore a judge and found guilty. Each was placed on one year's probation.

Before the lapse of their probationary period, appellants were arrested and charged with burglary. Insufficient evidence forced the charges to be dropped. The Probation Department, however, was notified of appellants' arrest and lodged a detainer against them for violation of probation.

A hearing was held at which only a probation officer testified. He testified, over objection,[3] that appellants were both arrested "on the charge of suspicion of burglary" and that the detainer was lodged because they "were together again shortly after [the court's] probation." Apparently, appellants were together when they were suspected of burglary. The lower court held that the probation officer's testimony was sufficient to show appellants had "consorted with known criminals," i.e., each other, and had thereby violated a condition of their probation. Act of June 19, 1911, P. L. 1055, §4, 19 P.S. §1055.[4] The court revoked ap-

Superior Ct. 167, 240 A. 2d 570 (1968) ; *Commonwealth v. McDermott*, 11 Pa. D. & C. 2d 601 (Phila. Q.S. 1956). Compare *Commonwealth ex rel. Marsh v. Lindsey*, 130 Pa. Superior Ct. 448, 450-451 n. 2, 198 A. 512 (1938) (KELLER, P.J.), with *Commonwealth v. Cano*, 389 Pa. 639, 133 A. 2d 800 (1957).

[2] Were appellants indigent, they would have been provided with counsel. Pa. R. Crim. P. 318. Cf. *Gideon v. Wainwright*, 372 U.S. 335 (1963).

[3] While no objection *per se* appears of record, counsel for appellants claims that such an objection was made. Moreover, though an objection *per se* is lacking, counsel did question the propriety of revocation based on the probation officer's lack of familiarity with the facts of the arrest.

[4] The Act states: "Whenever a person placed on probation . . . shall violate the terms of his or her probation, he or she shall be subject to arrest in the same manner as in the case of an escaped convict; and shall be brought before the court which released him or her on probation, which court may thereupon pronounce upon

pellants' probation and sentenced each to one year's imprisonment. This appeal followed.

Probation has traditionally been regarded as an act of grace by the court. See *Escoe v. Zerbst*, 295 U.S. 490 (1935).[5] Whether the decision to grant probation is grace or not, once imposed, clearly it is a form of criminal punishment, having retributive, rehabilitative, and deterrent values. These values are achieved primarily through the imposition of conditions upon the probationer's freedom of action.[6] In the instant case, prohibiting "consorting with known criminals" punishes a probationer by depriving him of the companionship of those who may be his friends. It seeks to rehabilitate the probationer by forcing him to associate with a better class of citizen. It deters him from future crime by limiting his contact with those who may be likely to commit crimes.

While achieving the goals of society, probation also permits the probationer to pursue values of his own. He may have family with whom he wishes to establish a continuing relationship. He may have or seek employment or may enter a job-training program to

such defendant such sentence as may be prescribed by law, to begin at such time as the court may direct."

[5] In *Escoe*, the Court construed the relevant federal probation statute and decided that a court's *ex parte* determination that a probationer had violated the conditions of his probation was in violation of that statute. Any implication from the Court's opinion that, constitutionally, a hearing is not required to determine if there has been a violation of probation is no longer viable. See *Mempa v. Rhay*, 389 U.S. 128 (1967).

[6] "The essence of probation is the *condition*—a judicially imposed restriction upon the convict's actions after release. The offender's life is closely supervised by a probation officer; his breach of any of the restrictions may lead to revocation of the limited grant of freedom and imposition of the more coercive penalty prescribed for the crime." Note, Judicial Review of Probation Conditions, 67 Colum. L. Rev. 181 (1967).

qualify for the employment. He may pursue values that are peculiarly his own. In any case, while on probation, the probationer establishes for himself a status, a status of freedom, which he desires to maintain.

Accordingly, probation is a form of punishment which allows the probationer to establish a status for himself. We should not, therefore, permit his probation to be revoked without the necessary procedural safeguards.[7] Such safeguards are particularly necessary in this case because of the vagueness of the condition which appellants allegedly violated. Without procedural safeguards, "consorting" is amenable to unreasonably broad application, cf. *Loving v. Commonwealth*, 206 Va. 924, 147 S.E. 2d 78 (1966), rev'd on other grounds 388 U.S. 1 (1967), and abuse of police discretion. See *Lanzetta v. New Jersey*, 306 U.S. 451 (1939). Cf. *Dombrowski v. Pfister*, 380 U.S. 479 (1965). See generally A. Amsterdam, The Void-for-

---

[7] "Certainly there are policy reasons why the courts should accord constitutional protections to the probationer. Probation is geared to generate respect for the law on the part of the probationer. This is accomplished by creating a mutual trust—in exchange for a second chance the accused agrees to bury any former resentment toward society and to turn square corners in his conduct. If a probationer who has been obeying the law were wrongfully accused, under the grace theory presently employed by the courts, he would not be entitled as a matter of right to assert many of the procedural safeguards in his defense. If it happens that his probation is revoked as a result of this false accusation, then quite likely this man can never be a useful citizen again. When he is sent to prison he will have no respect for the administration of justice and his resulting bitterness will render him the perfect host for this type of virus which breeds in a prison society. Here, then, is the policy reason for affording probationers due process of law . . ." Comments, The Rights of the Probationer: A Legal Limbo, 28 U. Pitt. L. Rev. 643, 651 (1967).

Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67 (1960).[8]

It has been recognized that the hearing at which the determination is made that the probationer violated a condition of his probation is a "critical stage" in the proceedings against him. *Mempa v. Rhay*, 389 U.S. 128 (1967); *Commonwealth ex rel. Remeriez v. Maroney*, 415 Pa. 534, 204 A. 2d 450 (1964); *Commonwealth v. Tinson*, 433 Pa. 328, 249 A. 2d 549 (1969).[9] By labeling the hearing a "critical stage," the courts have implied that the rights affected are sufficiently important to require the aid of counsel. The question for our consideration is what other procedural safeguards are necessary to protect the probationer from a denial of due process.[10]

Early in this century, a unanimous Superior Court said: "It is not obligatory on the court in inquiring into the conduct of the defendant while on probation to proceed according to the forms of law observed at the trial nor is the evidence to be received by the court limited to that which may come through the channel of a regular examination in court. It is the judgment of the court which is to be informed." *Commonwealth*

---

[8] For a short discussion of probation conditions which affect First Amendment rights, see Note, Judicial Review of Probation Conditions, note 6, supra at 203-204.

[9] Even earlier, the courts expressed concern for the procedural rights of the probationer.

"While probation is a matter of grace, the probationer is entitled to fair treatment, and is not to be made the victim of whim or caprice." *Burns v. United States*, 287 U.S. 216, 223 (1932).

See *Fleenor v. Hammond*, 116 F. 2d 982 (6th Cir. 1941). Cf. *Townsend v. Burke*, 334 U.S. 736 (1948).

[10] For an interesting discussion of this area and the attitudes of the Philadelphia judges in this regard, see Comment, Probation in Philadelphia: Judicial Decision and Constitutional Norms, 117 U. Pa. L. Rev. 323, 343-355 (1968).

504

v. *Fox,* 69 Pa. Superior Ct. 456, 459 (1918).[11] Nothing I say today disparages *Fox.* I would not require "the forms of law observed at the trial" to be observed at the probation violation hearing. In particular, I would not necessarily exclude hearsay testimony.

This case, however, illustrates what is required. Here, the sole evidence of violation of condition was the testimony of the probation officer. His only knowledge of the violation was a notation on his report that appellants had been seen together in such circumstances that they were suspected of burglary. He could not say what the circumstances were. He could not be cross-examined as to the truthfulness of the notation.

"[T]here can be no doubt as to the value of counsel in developing and probing factual and legal situations which may determine on which side of the prison walls appellant will be residing." *Commonwealth v. Tinson,* supra at 333. Cf. *United States v. Wade,* 388 U.S. 218 (1967). In the instant case, counsel was unable to do just that. In essence, since the testimony of the probation officer was the whole case against appellants, they were denied effective assistance of their counsel. Cf. *Pointer v. Texas,* 380 U.S. 400 (1965) ; *Commonwealth v. Cheeks,* 429 Pa. 89, 99, 239 A. 2d 793 (1968).

In summary, therefore, the evidence presented at the probation violation hearing must be such that counsel can fully probe it. This does not necessarily rule out the use of written or oral hearsay. But it does require the evidence to be of such a character that

---

11 The Court went on to say with respect to the facts of the case: "Nothing on the record justifies the belief that the court did not act on full and satisfactory evidence that the appellant had not conducted herself in accordance with [the] conditions [of her probation]. 69 Pa. Superior Ct. at 459,

the truthfulness of the alleged violation can be ascertained.[12]

I would reverse the judgment of sentence and the revocation order of the Court of Common Pleas of Philadelphia County and remand this case to that court for a probation violation hearing and other proceedings consistent with this opinion.

SPAULDING, J., joins in this dissenting opinion.

---

[12] I would require that part of the evidence at the probation violation hearing be that the probationer was told of the conditions of his probation and, especially in view of the vagueness of "consorting," understood their meaning.