Commonwealth *v.* Duncan, Appellant.

Argued April 30, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

496

*Leonard Sosnov,* Assistant Defender, with him *Jonathan Miller,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Linda West Conley,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, July 1, 1974:

On November 23, 1971, appellant was tried by the court without a jury and was convicted of loitering and prowling under the Act of June 24, 1939, P. L. 872, §418, *as amended,* 18 P.S. §4418 (recodified as 18 Pa. S. §5506). Following denial of post-trial motions, appellant was sentenced to two to twelve months' imprisonment. On appeal, the Superior Court affirmed with three judges dissenting.[1] We granted allocatur *limited*

---

[1] *Commonwealth v. Duncan,* 222 Pa. Superior Ct. 553, 294 A.2d 907 (1972).

"to the constitutional issue of vagueness and the issue of determining the extent of Section 418 with respect to the use and meaning of the word 'around' in the statute."

The undisputed facts giving rise to this prosecution are that appellant entered the rear fire tower of St. Joseph's Hospital in Philadelphia on April 2, 1971, at approximately 9:25 p.m. after the end of visiting hours. In response to a call by a nurse who heard noise in the tower, the police proceeded to the area and arrested appellant at 9:30 p.m. on the third floor landing of the fire tower.

The statute under which appellant was convicted provides: "Whoever at nighttime maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor. . . ." Act of June 24, 1939, P. L. 872, §418, *as amended*, 18 P.S. §4418 (recodified as 18 Pa. S. §5506). Because of the limitations placed on our grant of allocatur in this case, the presence or absence of maliciousness is not presently at issue. Rather, we must assume for our purposes that appellant was maliciously loitering and prowling when he was discovered in the fire tower of the hospital. Thus, we must now consider (1) whether or not this activity comes within the coverage of the statute and (2) whether or not the statute is unconstitutionally vague.

In arguing that the statute does not cover indoor prowling and loitering, the appellant has relied heavily on the principle of strict construction of penal statutes. In so doing, however, he has ignored the complementary principle that strict construction does not require "that the words of a criminal statute [be] given their narrowest meaning or that the lawmaker's evident intent [be] disregarded." *Commonwealth v. Mason*, 381 Pa. 309, 312, 112 A.2d 174, 175 (1955). In *Mason*, the ap-

pellant's argument for a narrow definition of "inducing" under the Securities Act was rejected in favor of a broader, more encompassing definition. 381 Pa. at 313, 112 A.2d at 176. The appellant had argued that the alleged victim's concession that he had entered into the questioned transaction willingly precluded a finding of inducement on his part. The Court, however, concluded that the evidence supported a finding that the transaction "was brought about *or* effected *or* induced by defendant" and held that such facts would constitute "inducing." 381 Pa. at 313-14, 112 A.2d at 176. By so holding the *Mason* Court refused to adopt the narrowest accepted definition; rather, the Court opted for a broader, more flexible definition which was more in line with the general legislative purpose underlying the Securities Act.

Another illustration of the principle modifying the rule of strict construction is the case of *Commonwealth v. Butler,* 189 Pa. Superior Ct. 399, 150 A.2d 172 (1959). There, the appellant had been convicted of carrying a firearm "concealed on or about his person" without a license even though the weapon was sticking out of appellant's pocket at the time. 189 Pa. Superior Ct. at 401, 150 A.2d at 173. The appellant argued that the word *concealed* as used in the statute was speaking of total concealment. The court conceded that some jurisdictions with similar statutes had adopted such an interpretation and that there were no Pennsylvania cases on point. Nevertheless, stating that the courts have a duty "to see to it that the legislative intent is not thwarted by a construction which is unreasonably rigid and inflexible" and that the primary evil which the act sought to prevent was the carrying of unlicensed weapons rather than their concealment, the Superior Court opted for the broader reading. 189 Pa. Superior Ct. at 402-03, 150 A.2d at 173.

The construction urged by appellant in the instant case thwarts the obvious legislative intent behind the statute. While we concede that the word *around* can be used to mean "outside," its use in the present context connotes the more flexible definition—"in the vicinity or neighborhood." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 120 (1971). The statute in question was obviously designed to alleviate the danger to human life and quiet enjoyment of one's dwelling which is presented by the nighttime loitering or prowling of malicious-minded individuals. Clearly, this danger is, if anything, intensified when the proscribed activity occurs inside, rather than outside, the dwelling. Consequently, to hold that only outdoor, but not indoor, loitering or prowling is proscribed by the statute would be to reach an absurd result.[2] Such a result is at variance with the above cited authorities as well as the mandate of the Statutory Construction Act of 1972.[3]

Moreover, even under the appellant's construction of the term *around* (*i.e.*, outside to the exclusion of inside), we are satisfied that appellant's presence in the fire tower, being outside the dwelling areas of the hospital, would support his conviction. In this regard, we note that the dissenting opinion in the Superior Court conceded this point. *Commonwealth v. Duncan,* 222 Pa. Superior Ct. 553, 556 n. 3, 294 A.2d 907, 908 n. 3 (1972).

---

[2] It may be suggested that the existence of the separate crime of unlawful entry (Act of November 19, 1959, P. L. 1518, §1, 18 P.S. §4901.1, *repealed* June 6, 1973), indicates that the statute in issue here should be construed as appellant urges. We reject this argument for two reasons. First, the simultaneous violation of more than one criminal statute is not uncommon and certainly has no effect on the validity of the respective penal statutes. Secondly, the crime of unlawful entry as defined in the statute does not necessarily cover all situations of indoor loitering or prowling.

[3] Act of December 6, 1972, P. L. 1339, §3, 1 Pa. S. §1922.

Finally, we have no difficulty with appellant's vagueness argument. The statute gives adequate warning to potential offenders. As stated by Judge LIPEZ in *Commonwealth v. McDermott,* 11 Pa. D. & C. 2d 601, 604 (1956), after he had examined and defined each element of the present offense individually: "In plain words, any person of ordinary understanding can readily know that if he moves around a place which somebody else uses for living purposes, at nighttime, in a stealthy or sneaky manner with an evil intention, he will run afoul of the law and be subject to punishment. This is a clearly defined standard which the ordinary person can understand."

For the foregoing reasons, the judgment of sentence is affirmed.

Mr. Justice NIX took no part in the decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent. The appellant did not commit any crime. He walked into a hospital about twenty-five minutes after visiting hours were over. On the record before us, we must conclude that he did not break in. He did not unlock any locked doors. He walked to a door which opened into the stairway leading to the various floors of the hospital. The record uses the term "fire tower." A "fire tower" is nothing more than the customary exit stairs required in most public buildings. The use of such stairs, particularly in a hospital, after visiting hours, is certainly not uncommon. The appellant did nothing except walk up to the third floor landing where he was arrested. A nurse heard him making noise, but the record before us does not disclose any further information about the kind of noise which was heard. It could have been footsteps, or the opening and closing of doors, or coughing or sneezing. On this record, we cannot conclude that the noise heard gave rise

to any reasonable inferences of criminal conduct by the appellant. When arrested, the appellant was alone. He had no tools or weapons in his possession. He did not have anything in his possession which belonged to the hospital. If every person, leaving or entering a hospital twenty-five minutes after visiting hours, who was found using the stairs and making any kind of noise, is guilty of criminal conduct, we must erect more jails.

The dissenting opinion in the Superior Court correctly said in this case:

"The statute requires loitering or prowling that is 'malicious'. 'Malicious', as used in this context, has been defined to mean 'an intent to do a wrongful act', Commonwealth v. Williams, 185 Pa. Superior Ct. 312, 315, 137 A.2d 903, 905 (1958); '[having] as its purpose injury to the privacy, person or property of another.' Commonwealth v. Dial, 445 Pa. 251, 285 A.2d 125 (1971), citing Commonwealth v. DeWan, 181 Pa. Superior Ct. 203, 208, 124 A.2d 139, 141 (1956). . . .

. . . .

"In the instant case, all that was proved was appellant's entry into and presence in a prohibited area of a hospital. These facts and circumstances do not give rise to a reasonable and natural inference that, beyond a reasonable doubt, appellant's actions had as their purpose, 'injury to the privacy, person, or property of another.' There was no evidence of the presence of any accomplices, tools, weapons, or fruits of another crime. Cf. Commonwealth v. Hargrave, 212 Pa. Superior Ct. 167, 240 A.2d 570 (1968); Commonwealth v. Nicholls, 207 Pa. Superior Ct. 410, 217 A.2d 768 (1966). Nor was there evidence of conduct which would show the commission of, or preparation for an unlawful act, or of 'peeping' into the privacy of others. Cf. Commonwealth v. DeWan, supra, Commonwealth v. Nicholls, supra. This is a clear case of the facts presented being

reasonably susceptible to explanation on a theory other than that of the appellant's guilt. To allow a conviction to stand based on mere presence in a prohibited area, without more, would render the element of malicious intent or purpose of virtual nullity.

"The evidence in this case is insufficient, as a matter of law, to establish, beyond a reasonable doubt, the malicious nature of appellant's conduct. As the Commonwealth has failed to establish an essential element of the crime, this conviction should not stand." *Commonwealth v. Duncan,* 222 Pa. Superior Ct. 553, 556 294 A.2d 907, 908-09 (1972) (footnotes omitted).

The majority does not address itself to the issue of the sufficiency of the evidence because of the limitations placed on our grant of the petition for allowance of appeal. The majority accurately points out that we limited our grant of the appellant's petition, but this should not preclude our consideration of the issue. This Court has not hesitated in the past to dismiss a petition as *improvidently granted* when further study warrants such an order. In this case, we should hold that our grant was *improvidently limited,* and consider, either with or without additional oral argument, the issue of whether the evidence sustains the conviction. On the record before us, I am compelled to agree with the dissenting opinion of the Superior Court that the conviction must be reversed.

I must also dissent because of the interpretation given by the majority of the word "around" in the context of this statute. The statute in question is penal in nature and must, therefore, be strictly construed. Statutory Construction Act of 1972, 1 Pa. S. §1928(b). The majority grounds its decision today on the principle "that strict construction does not require 'that the words of a criminal statute [be] given their *narrowest meaning* or that the *legislative intent* be thwarted.'"

(Emphasis added.) This principle is only applicable if the *narrowest meaning* is *unreasonable*.

Many words are subject to numerous and varied meanings. In order to ascertain the intended meaning of a word, it must be viewed in the context in which it is used. Many definitions will then be excluded because, in context, they would be patently unreasonable. This Court in *Commonwealth v. Mason*, 381 Pa. 309, 112 A.2d 174 (1955), and the Superior Court in *Commonwealth v. Butler*, 189 Pa. Superior Ct. 399, 150 A.2d 172 (1959), found certain proposed definitions *to be so narrow as to be unreasonable* when viewed in their statutory context. When, however, we have found several alternative definitions reasonable, we have stated that, "when a criminal statute calls for construction it is not the construction that is supported by the greater reason that is to prevail, but that one which, *if reasonable, operates in favor of life and liberty . . . ."* *Commonwealth v. Exler*, 243 Pa. 155, 162-63, 89 A. 968, 971 (1914) (emphasis added); *see Commonwealth v. Glover*, 397 Pa. 543, 156 A.2d 114 (1959). Thus, the issue in the present case is whether appellant's proposed interpretation of the word *around* is reasonable in its statutory context. If it is reasonable, we must accept it.

Under the rules of statutory construction, we are to construe words "according to their common and approved usage." Statutory Construction Act of 1972, 1 Pa. S. §1903(a). The rationale for such a rule is obvious. Due process requires that a statute be published in order that citizens be given notice of prohibited conduct. The word *around* is frequently used with the meaning suggested by the appellant. That meaning is one of the "common and approved usages" of the word *around*. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 120 (1971). There are, as the prosecution argues, other "common and approved usages" of the

word *around*. *See Id.* The majority has chosen what it considers to be a more flexible definition—"in the vicinity or neighborhood." *Id.* While such a definition may be a reasonable and commonly accepted one, it does not support the majority's conclusion that *around* means inside as well as outside. The same source defines *vicinity* as the "quality or state of being near" and "a surrounding area or neighborhood." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2550 (1971). *Neighborhood* is defined as "the quality or state of being immediately adjacent or relatively near to something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1514 (1971). While I recognize that a battle of definitions may be endless, I think that there can be no doubt that an ordinary citizen could reasonably interpret the present statute as only prohibiting the malicious loitering or prowling *outside* of the enumerated buildings.

The majority also argues that even if the word *around* in the statute is construed to be outside, the appellant would be covered by the statute because he was *outside* that *part* of the hospital building used for living quarters of hospital patients even though he was *inside* the hospital building. I cannot accept that interpretation of the statute. The statute does not say *around* the *part* used for living or dwelling purposes. It says *around* the *place* used in *part* for living or dwelling purposes. The *place* in this case is the hospital building. The result urged by the majority, therefore, is not warranted by the required strict construction of this penal statute.

No citizen, reading the statute in this case, could ever reasonably anticipate that it applies to one entering or leaving a hospital after visiting hours by means of the exit stairs. If the statute, therefore, applies to such a citizen, it must be considered unconstitutional because of vagueness.

The order of the Superior Court and the judgment of sentence of the trial court should be reversed and the appellant ordered discharged.

Mr. Justice ROBERTS joins in this dissenting opinion.