515 A.2d 558

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Barry Charles GORDON, Appellee.**

Supreme Court of Pennsylvania.

Argued April 18, 1986.

Decided Sept. 26, 1986.

John A. Reilly, Dist. Atty., Sandra L. Elias, Media, for appellant.

H. Robert Fiebach, Kenneth J. Warren, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is an appeal by the Commonwealth of Pennsylvania (Appellant) from the March 15, 1985, Order of the Superior Court reversing the judgment of sentence of the Court of Common Pleas of Delaware County and discharging Barry Charles Gordon (Appellee).[1]

On July 15, 1982, Appellee, a licensed pharmacist, sold a prescription drug to Mr. Cawley, a criminal informant, without a prescription. The drug sold by Appellee was

---

1. We hear this appeal pursuant to Section 2 of the Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S. § 724(a), as amended October 5, 1980, which provides:

    § 724. Allowance of appeals from Superior and Commonwealth Courts.

    (a) General rule.—Except as provided by section 9781(f) (relating to limitation on additional appellate review), final orders of the Superior Court and final orders of the Commonwealth Court not appealable under section 723 (relating to appeals from Commonwealth Court) may be reviewed by the Supreme Court upon allowance of appeal by any two justices of the Supreme Court upon petition of any party to the matter. If the petition shall be granted, the Supreme Court shall have jurisdiction to review the order in the manner provided by section 5105(d)(1) (relating to scope of appeal).

Dilaudid, a Schedule II opiate derivative drug. The sale took place at a motel in Springfield Township, Delaware County. The arrangement was that Mr. Cawley was to purchase two bottles, each containing one hundred pills, at a price of eight hundred ($800.00) dollars per bottle. Additionally, Mr. Cawley was to procure both a prostitute and a motel room for Appellee's use. Mr. Cawley signed a consent form manifesting his willingness to have his conversation with Appellee intercepted and recorded, and he was wearing a "body wire," an electrical surveillance device, while consummating the transaction with Appellee.

When Appellee brought two bottles of Dilaudid with him, Mr. Cawley explained that he could "scrounge up" only eight hundred ($800.00) dollars, and was, therefore, only able to purchase one bottle of pills. Appellee agreed to the sale of a single bottle at that time, and a subsequent sale the next day, when Mr. Cawley would be able to acquire an additional eight hundred ($800.00) dollars for that purchase. Mr. Cawley neither possessed a prescription for Dilaudid, nor did Appellee request Mr. Cawley to provide him with one. Upon a transfer of possession of the pills from Appellee to Mr. Cawley, Appellee was immediately arrested and charged with violating subdivisions 13(a)(16) and 13(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act (CSDDCA).[2]

2. Act of April 14, 1972, P.L. 233, No. 64 (as amended), 35 Pa.S. § 780–113(a) which provides:

35 P.S. § 780–113(a): The following acts and the causing thereof within the Commonwealth are hereby prohibited:

(16) knowingly or intentionally possessing a controlled or counterfeit substance by *a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board,* unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act. (Emphasis added.)

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by *a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board,* or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance. (Emphasis added.)

On November 12, 1982, Appellee waived his right to a jury trial and a non-jury trial commenced before the Honorable Charles C. Keeler of the Court of Common Pleas of Delaware County. The uncontroverted evidence at trial showed that Appellee was a pharmacist licensed by the State Board of Pharmacy. At the conclusion of the Commonwealth's case, Appellee demurred to the evidence and, at the conclusion of his own case, moved for a directed verdict of acquittal, contending that as a licensed pharmacist, he could not be found guilty of violating the sections with which the Commonwealth had charged him. Appellee maintained that subdivisions 13(a)(16) and (30) of the CSDDCA, by their very terms, did not apply to practitioners, which included licensed pharmacists. The trial court denied both motions and, on November 15, 1982, found Appellee guilty of the offenses charged. Post-verdict motions were denied and Appellee was sentenced on May 23, 1983, to pay costs and fines in the amount of two thousand five hundred ($2,500.00) dollars, and to undergo imprisonment in the Delaware County Prison for a minimum of eleven (11) months to a maximum of twenty-three (23) months, less one day.

Appellee filed a timely appeal to the Superior Court, which held that he could not be convicted under Sections 13(a)(16) and (30) because those sections specifically exempt licensed pharmacists. Superior Court, therefore, reversed Appellee's conviction and discharged him. We then granted the Commonwealth's Petition for Allowance of Appeal to determine the interesting question of whether a pharmacist licensed to distribute drugs in the course of his professional conduct, who sells drugs outside the course of his profession in exchange for money and the use of a prostitute, is exempt from prosecution under 35 Pa.S. § 780–113(a)(16) and (30) of the CSDDCA. Appellee maintains, and, indeed, the Superior Court held, that his status as a licensed pharmacist precludes prosecution under these sections of the Act, and that once one obtains a license as a physician,

pharmacist, etc., he attains the status of "practitioner" and can be prosecuted, if at all, only under 35 Pa.S. § 780–113(a)(14),[3] when he engages in illegal deliveries of drugs, regardless of the place, method, nature or circumstances of the delivery.

The Commonwealth, on the other hand, maintains that these three sections are not "status" controlled, but, rather, pertain to the manner, nature and guise of the delivery or transaction. Under the Act, the definition of practitioner is provided by 35 Pa.S. § 780–102(b):

> *Practitioner means:* (i) *a* physician, osteopath, dentist, veterinarian, *pharmacist,* podiatrist, nurse, scientific investigator, or other person *licensed, registered or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance, other drug or device IN THE COURSE OF PROFESSIONAL PRACTICE or research in the Commonwealth of Pennsylvania;* (ii) a pharmacy, hospital, clinic or other institution licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance, other drug or device in the course of professional practice or research in the Commonwealth of Pennsylvania. (Emphasis added.)

While conceding that "practitioner" includes a licensed pharmacist distributing drugs in the course of his *professional practice,* the Commonwealth contends that the delivery made in the instant case was not a delivery made in the course of the Appellee's professional practice, because he was not acting, nor did he purport to be acting, under the

---

3. 35 P.S. § 780–113(a): The following acts and the causing thereof within the Commonwealth are hereby prohibited:

(14) The administration, dispensing, delivery, gift or prescription of any controlled substance by any *practitioner* or professional assistant under the practitioner's direction and supervision unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient relationship; (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession. (Emphasis added.)

guise of his profession. Hence, the Commonwealth concludes that Appellee was not acting as a "practitioner" at the time in question, and the Commonwealth reasons that he was not exempt from prosecution under § 780–113(a)(16) and (30).

We find the Commonwealth's reasoning persuasive. There is no factual dispute in this case—the question is purely one of statutory construction. Appellee claims exemption from prosecution under §§ 780–113(a)(16) and (30) by virtue of his status as a "practitioner," yet, at no time has he claimed that he was acting in the course of his professional practice. Nor would this record support such a claim. The learned trial judge, in his analysis of § 780–102(b), correctly noted that "to fall within the definition of practitioner, either individually as a pharmacist, or as a representative of a business entity such as a pharmacy, the party claiming the exemption must act within 'the course of professional practice'." 35 Pa.S. §§ 780–113(a)(16) and (30) provide exemption for "persons registered under the Act" or "practitioners licensed by the appropriate State board." 35 Pa.S. § 780–106(a), entitled "Registration," provides:

No person shall operate within this Commonwealth as a manufacturer, distributor or retailer of controlled substances, other drugs and devices nor sell, offer for sale nor solicit the purchase of controlled substances, other drugs and devices nor hold them for sale or resale until such person has registered under this act with the secretary. . . .

(3) . . . Nothing contained herein shall be construed to require the registration hereunder of any practitioner registered or licensed by the appropriate State board. . . .

The definitional section of the Act defines registrant as "any one person registered under the laws of this Commonwealth to manufacture, dispense, distribute, administer or sell drugs." 35 Pa.S. § 780–102. Thus, one who is otherwise registered or licensed by the Commonwealth or any of

its various agencies or boards need not specifically register under the Act itself.

Appellee has presented no evidence of a separate registration entitling him to the exemption afforded "persons registered under the Act." Under the facts of this case, we cannot accept his assertion that his status as a licensed pharmacist qualifies him for the "practitioner" exemption without regard to the nature of the transaction involved. Our analysis of the entire Act compels the conclusion that the Legislature did not intend that an individual could, by obtaining a license as a pharmacist, then engage in conduct far from the trappings of the pharmacy and its business, which amounts to no more than an illicit, clandestine, street transaction, and then use the license as a shield to avoid prosecution for such conduct. In ascertaining legislative intent for purposes of construing a statute, the practical results of a particular interpretation may be considered. See, *Lehigh Valley Co-Op Farmers v. Com., Bureau of Employment Sec. Dept. of Labor and Industry*, 498 Pa. 521, 447 A.2d 948 (1982); 1 Pa.C.S. § 1921(c)(6). Appellee asserts our decision in *Commonwealth v. Hill*, 481 Pa. 37, 391 A.2d 1303 (1978), for the proposition that a basic tenet of statutory construction is that penal statutes must be strictly construed. However, strict construction does not require that the words of a criminal statute be given their narrowest meaning or that the Legislature's evident intent be disregarded. *Commonwealth v. Duncan*, 456 Pa. 495, 321 A.2d 917 (1974). This is not a case where we are construing ambiguities, rather, we are merely interpreting the plain language of the Act in light of the definitions provided. Status as a licensee is only the beginning of the analysis of whether a person is a practitioner; it is not the end. It still remains to be determined whether the licensed party is acting in the course of his professional practice.

Appellee asserts that the Legislature has established a parallel system for regulating the possession and sale of controlled substances, and maintains that the system ap-

plies one set of restrictions and standards to practitioners, and another set to non-prctitioners, and that the distinction rests solely on one's status. Our reading of the Act convinces us that the separate systems are distinguished according to the nature of the transaction *and* the status of the individual involved. We cannot presume that the Legislature intended an absurd or unreasonable result. *Zimmerman v. O'Bannon*, 497 Pa. 551, 442 A.2d 674 (1982). Thus, certain activities may be proscribed by more than one section of the Act. When a licensed pharmacist acts like a street pusher, he is not a "practitioner" and can be prosecuted under §§ 780–113(a)(16) and (30).

We also reject the Superior Court's determination that unauthorized transactions, such as in this case, should be prosecuted under 35 Pa.S. § 780–113(a)(14). That section is designed to prohibit the abuse of the practitioner's privilege to distribute drugs under the cloak of his privilege. Appellee did not employ the cloak of his privilege in this transaction; his actions were the blatant transgressions of a common street pusher and the Commonwealth is entitled to prosecute him as such.

Accordingly, we reverse the Order of Superior Court which reversed Appellee's conviction. This case is remanded to Superior Court to consider the issues not disposed of in their prior review.

HUTCHINSON, J., concurs in the result.

ZAPPALA, J., files a dissenting opinion in which NIX, C.J., joins.

ZAPPALA, Justice, dissenting.

I must dissent to yet another instance where, in the majority's anxiety to sustain a conviction, the proper application of the law is ignored. In the instant case the majority chooses to apply a strained interpretation of the

Controlled Substance and Cosmetic Act, 35 P.S. § 780–101 et seq., rather than admit that the authorities mistakenly charged the Appellee under the wrong subsection of that act. Nowhere in my reading of the constitutional mandate of this Court is there provided an obligation upon us to cure defective complaints or act as a court of criminal equity. I certainly agree with the majority's conclusion that the legislature did not attempt to allow a pharmacist to "use [his] license as a shield to avoid prosecution", slip opinion at p. 8. The majority however, ignores the positive statement the legislature has made in that regard by failing to compare the penalties imposable for a violation of section 780–113(a)(16), the section under which Appellee was charged and section 780–113(a)(14) under which the same conduct is prohibited by a practitioner. Section 780–113(b) provides that the violation charged to Appellee is classified as a misdemeanor punishable by imprisonment not exceeding one year and a fine not to exceed to $5,000 or both. However, violation of subsection 14, pertaining to *practitioners,* is classified as a felony with a possible sentence not to exceed 15 years and a fine not exceeding $250,000 or both or such larger amount as is sufficient to exhaust the assets utilized in and the profits obtained from the illegal activity. 35 P.S. § 780–113(f)(1). Thus it is obvious that the legislature chose to more heavily penalize those who as *practitioners* have access to controlled substances and therefore have a greater responsibility to prevent their misuse or abuse. I cannot see how much clearer the legislature must delineate that practitioners acting outside the scope of their duties in violation of the act are specifically provided for. As such it is abundantly clear that the Appellee regrettably was charged under the wrong section of the statute and the semantic gymnastics undertaken by the majority do nothing to change that result. I therefore dissent.

NIX, C.J., joins in this dissenting opinion.