686 A.2d 6

COMMONWEALTH of Pennsylvania,

v.

Denail GIDDINGS, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 9, 1996.

Filed Nov. 12, 1996.

José L. Ongay, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Com., appellee.

Before TAMILIA, SCHILLER and MONTEMURO,* JJ.

TAMILIA, Judge.

Denail Giddings appeals from the June 22, 1995 judgment of sentence imposing a term of imprisonment of thirty-five (35) to eight-four (84) months. Following a non jury trial, appellant was convicted of criminal conspiracy,[1] criminal trespass,[2] criminal mischief[3] and loitering.[4] Sentence was imposed on the criminal trespass conviction only. Since appellant challenges the sufficiency of the evidence supporting his convictions, a review of the facts is necessary.

On March 8, 1994, at or around 12:35 A.M., Thomas Ungaro was working in the back room of his home located at 2068 Poplar Street when he heard banging at his front door. After the banging continued for about three minutes, he called 911 and stated that somebody was trying to enter his house. He then locked the back room and waited for the police to arrive.

At approximately 12:30 A.M., Philadelphia Police Officers Kenneth Spencer and Russell Seller received a radio call about a burglary in progress at 2068 Poplar Street. Upon

---

* Retired Justice assigned to the Superior Court.

1. 18 Pa.C.S. § 903.

2. *Id.,* § 3503.

3. *Id.,* § 3304.

4. *Id.,* § 5506.

arrival they observed the defendant, Denail Giddings, and another male, Stanley Warren, jumping over the porch rail between 2068 and 2070 Poplar Street. After jumping over the rail from the 2068 porch, the defendant began to knock on the door of 2070 Poplar Street. The police pulled up and asked the defendants, "What are you doing?" The defendant responded, "We are looking for our boy." The defendants walked down the steps to the sidewalk where Warren attempted to flee. The police blocked Warren's exit and asked him why he was running. He replied, "We don't know why you are stopping us." While other police officers arrived on the scene, Officers Spencer and Seller patted down and frisked the defendants for weapons. Another police officer knocked on the door of 2068 Poplar Street and Mr. Ungaro came out.

The defendants were held at bay while the officers searched the porch. They observed that the door had been chopped away and that there was a one to two inch hole by the door knob. They also found a black and yellow screwdriver just below the door. The defendant and Warren were then placed under arrest.

(Slip Op., Brinkley, J., 4/15/96/ pp. 2–3.) On March 17, 1995, appellant was convicted of the aforementioned charges, but acquitted of burglary and theft by unlawful taking. Sentence was imposed on June 22, 1995.

■ On appeal, appellant claims the evidence was insufficient to sustain each of his convictions. Initially, our standard of review for "sufficiency of the evidence" claims views the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth as verdict winner. The test is whether the evidence, viewed in this light, is sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. McIlvaine*, 385 Pa.Super. 38, 560 A.2d 155 (1989). The credibility of witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact, who is free to believe all, some or none of the evidence. *Commonwealth v. Yetsick*, 402 Pa.Su-

per. 615, 587 A.2d 788 (1991). We address appellant's claims seriatim.

The criminal trespass statute, 18 Pa.C.S. § 3503, provides:

### § 3503. Criminal trespass

(a) Buildings and occupied structures.—

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

Appellant claims the evidence presented at trial was insufficient to sustain his conviction for criminal trespass because he did not enter or break into a building or occupied structure. Although appellant does not develop this argument, he is apparently claiming that since no part of his body actually entered Mr. Ungaro's house, he cannot be guilty of criminal trespass. Initially, since the hole in Mr. Ungaro's door was only one to two inches in diameter, we must concede the likelihood that no part of appellant's body entered the residence. However, since the hole went all the way through Mr. Ungaro's door, it is clear that, at the very least, the screwdriver utilized by appellant and Mr. Warren entered the residence. Thus, the true issue presented by appellant's claim is whether the entry requirement of section 3503 can be satisfied by an instrument manipulated by one whose body never actually enters the building or occupied structure.[5] This issue has not been addressed by our appellate courts. Moreover, despite the fact that the entry requirement of criminal trespass is the same as that of burglary, *Commonwealth v. Thomas*, 522 Pa. 256, 561 A.2d 699 (1989), we have

---

**5.** We note that appellant was convicted of "break[ing] into" a building under section 3503(a)(1)(ii), rather than "enter[ing]" under (a)(1)(i). However, the legislature has defined "breaks into" as "[t]o gain entry". *Id.*, § 3503(a)(3). Thus, regardless of the provision under which appellant was convicted, we must consider whether he entered Mr. Ungaro's house.

found no Pennsylvania appellate case considering whether entry for purposes of burglary can be achieved by an instrument.

One trial court decision concerning the entry requirement of both crimes warrants review, however. In *Commonwealth v. Peterson,* 21 Pa. D. & C.4th 222 (1993), Judge William S. Kieser of the Lycoming County Court of Common Pleas considered whether a coat hanger could satisfy the entry requirements of burglary and criminal trespass. The defendant in Peterson had inserted a coat hanger through the mail slot of a business and used it to steal knit hats. According to the court, "[t]he only 'entry' into the store was made by the coat hanger being inserted through the mail slot; no part of the defendant's body entered the store through the mail slot or otherwise." *Id.* at 224. Despite the lack of entry by appellant's body, the court convicted defendant of burglary and criminal trespass, holding as follows:

> The obvious purpose of the burglary statute is to protect the sanctity of the building and the safety of the persons and contents within it. When that building is penetrated by an offender with the intent of committing an offense, in this case that of theft by removing the owner's goods, it does not matter whether the entry was by the defendant's fingernail, finger, hand or arm, nor by an instrument held and manipulated by those body parts.

> It is ... the opinion of this court that the entry into the structure only by the instrument of the coat hanger, under the facts of this case, constitutes an 'entry' under our present burglary statute. The entry by an instrument is also sufficient to constitute the necessary element of unlawful entry under ... criminal trespass.

*Id.* at 226–227.

We agree with Judge Kieser that the entry requirement of criminal trespass can be satisfied by an instrument, since this approach better serves the interests sought to be advanced by statutes prohibiting unauthorized entry into buildings and other structures. As stated above, according to Judge Kieser

"[t]he obvious purpose of the burglary statute is to protect the sanctity of the building and the safety of the persons and contents within it." *Peterson,* supra at 226. Similarly, this Court has held that "[t]he purpose of the criminal trespass statute is to prevent unlawful intrusion onto real property[.]" *Commonwealth v. White,* 342 Pa.Super. 1, 492 A.2d 32 (1985); see also 87 C.J.S. Trespass § 144 ("The purpose [of criminal trespass statutes] is to protect the actual possession of real estate against unlawful and forcible invasions[.]"). This purpose is offended equally whether the "intrusion" is by the defendant's body, or by an extension thereof, and we decline to impose upon section 3503 a distinction which exists in form only.

This view is supported by appellate decisions from other jurisdictions construing a statutory "entry" requirement. For instance, in *People v. Osegueda,* 210 Cal.Rptr. 182, 163 Cal. App.3d Supp. 25 (1984), the Appellate Department of the California Superior Court considered whether drilling a five to six inch hole through the wall of an electronics store constituted an "entry", despite the fact that no part of appellant's body entered the store. The court began its analysis by noting "there exists no unanimity of opinion or abundance of decisions in California or out-of-state jurisdictions pertaining to the effect of the use of an instrument for purposes of entry." *Id.* at 185–186, 163 Cal.App.3d Supp. at 31. The court then turned to "the sole California case directly addressing the issue", *id., People v. Walters,* 57 Cal.Rptr. 484, 249 Cal.App.2d 547 (1967). In *Walters,* the court had affirmed the burglary convictions of several appellants who were apprehended after they opened a vent on the roof of a retail store and dangled a rope into the store's interior. Relying on *Walters,* the *Osegueda* Court found that the five to six inch hole drilled by appellants was an "entry", and held as follows:

Any kind of entry, partial or complete, direct or indirect, will satisfy the simple statutory requirement [of entry]. Thus, the defendant's arm, foot or finger placed in an open door, window or other aperture, or through the glass of a

window, is an entry; and the entry may also be made through the agency of *an instrument or tool*[.]

*Id.* at 186, 163 Cal.App.3d Supp. at 32 (citation omitted; emphasis in original).

Four years after *Osegueda*, the Appellate Department of the California Superior Court revisited the definition of "entry" under California law. In *People v. Ravenscroft*, 243 Cal.Rptr. 827, 198 Cal.App.3d 639 (1988), appellant was convicted of burglary after stealing and using an automatic teller machine (ATM) card. On appeal, appellant argued "that although his insertion of an ATM card into the ATM activated the process of obtaining money, it does not constitute an entry under [California law] since he did not violate the air space of the bank buildings and because he had no control over the card while it was in the machine." *Id.* at 828, 198 Cal.App.3d at 643. In rejecting this claim, the Court relied on *Osegueda* and *Walters* and found that appellant had "entered" the bank:

The insertion of an ATM card to effectuate larcenous intent is no less an entry into the air space of a bank as would be the use of any other tool or instrument. Although the California Penal Code does not define "entry" for the purpose of burglary, the California courts have found that a burglary is complete upon the slightest partial entry of any kind.... [*Osegueda, Walters, supra.*] By pushing Lewis's card into an ATM's slot, the defendant completed the crime. Further control of the card is unnecessary.

.    .    .    .    .

[Nonetheless,] Ravenscroft argues that *Walters* and *Osegueda, supra*, should not apply to this case since they involve more traditional violations of air space with more traditional burglars' tools.

.    .    .    .    .

The fact that both *Walters* and *Osegueda* involve more traditional methods of burglary is of no moment.... The gravamen of burglary is an act of entry, no matter how partial or slight it may be, with an instrument or tool which is appropriate for the particular instance.... One can commit burglary even though the instrument in question is

used merely to facilitate entry rather than to complete the larceny. (*Ibid.*) The insertion of a fraudulently obtained ATM card effectuates an entry into a bank's ATM for larceny just as surely as does a crowbar when applied to a vent.

*Id.* at 828–29, 198 Cal.App.3d at 643–644.

A similar definition of "entry" was endorsed by the Court of Appeals of New Mexico in *State v. Tixier,* 89 N.M. 297, 551 P.2d 987 (1976). In *Tixier,* the appellant utilized an unidentified instrument to make a four-inch by eight-inch hole in the garage door of an auto store, and the instrument activated a burglary alarm light beam that was located one-half inch inside the door. Appellant was apprehended before he gained access to the store. According to the court:

> There is no evidence that any part of defendant's body entered the store. However, there is a fair inference from the evidence that the instrument used to remove the piece of door crossed the light beam and activated the burglary alarm.
>
> [Thus], [t]he question is whether evidence that an unidentified instrument penetrated one-half inch inside the building is sufficient evidence of entry. . . .

*Id.* at 298, 551 P.2d at 988. In affirming appellant's burglary conviction, the court held:

> A one-half inch penetration into the building is sufficient. Any penetration, however slight, of the interior space is sufficient. The fact that the penetration is by an instrument is also sufficient.
>
> .     .     .     .     .
>
> Evidence of a break-in by use of an instrument which penetrates into the building is, in our opinion, evidence of entry into the building. . . .
>
> Burglary is an offense against the security of the building. When that security is breached by the penetration of an instrument into the building there has been an entry[.]

*Id.* at 299, 551 P.2d at 989 (citation omitted).

Similarly, in *Mullinnix v. State,* 177 Ga.App. 168, 338 S.E.2d 752 (1985), the Court of Appeals of Georgia considered

whether appellant had "entered" a food market when he inserted an instrument through a hole in the doorknob of the market's back door in an attempt to disable an alarm "trip" wire. He accidently activated the alarm and was apprehended hiding in an alley outside the door. In affirming appellant's burglary conviction, the court held:

> The door knob hole was entered by the appellant with a device as surely as if he had stuck his hand in a window with intent to steal, or hoisted his upper half in a window and was caught with his legs hanging out.
>
> .   .   .   .   .
>
> Where as here a defendant "breaks the plane" of the structure by removing an alarm device with an instrument stuck in the door, with intent to steal, he has [entered] and the difference between him and [a] man who hoist[s] his upper half in a window to enter the house is a difference only in degree and not in kind.
>
> .   .   .   .   .
>
> The evidence was sufficient to permit a reasonable trier of fact to rationally find proof of entry with intent to commit a theft, beyond a reasonable doubt.

*Id.* at 169–70, 338 S.E.2d at 753 (citations omitted).

The Supreme Court of Tennessee also has considered whether entry can be achieved by an instrument. In *State v. Crow*, 517 S.W.2d 753 (Tenn.1974), the appellant had broken the glass on the front door of a lounge and split with a knife two layers of burlap that were attached to the inside of the door frame. A police officer observed the broken glass and arrested appellant, who was ultimately convicted of burglary. The Court of Criminal Appeals had reversed appellant's conviction on the basis that he had not "entered" the lounge. In reversing the intermediate appellate court and reinstating appellant's conviction, the Tennessee Supreme Court held:

> From the circumstantial evidence in this case, the jury could have found that the defendant broke the glass and

split the burlap with the knife, tire tool or screw driver, and thus entered the business house with an instrument. . . .

.    .    .    .    .

In our opinion, the evidence is sufficient to sustain a finding by the jury that an entry, with intent to commit a felony, actually occurred.

*Id.* at 755.

Finally, in *Bailey v. State,* 231 A.2d 469 (Del.1967), the Supreme Court of Delaware considered whether "entry" had been established where a "crowbar pierced through the door to the interior of the premises" of an advertising company. *Id.* No part of appellant's body entered the premises and he fled when a police officer approached. Nonetheless, the Court rejected appellant's appeal on the basis "that there was evidence of an entry, within the statutory definition, sufficient to sustain the conviction." *Id.* (citations omitted).

As this review indicates, numerous jurisdictions have held that "entry" may be achieved where an instrument, rather than the defendant's body, breaches the exterior of a building or other structure.[6] We agree with these jurisdictions, and we

---

**6.** We also note substantial authority indicating that entry is achieved only where the instrument inserted into the structure is also intended or used to commit the crime which is the object of the entry. Jurisdictions which endorse this view have relied, without exception, on 12A C.J.S. Burglary, § 22(c), which provides:

    **c. Use of Instrument, Explosives, or Torch**

    In order to constitute burglary, it is not necessary that entry be made by any part of the body; it may be by an instrument, as in a case where a hook or other instrument is put in with intent to take out goods. . . . *It is necessary, however, that the instrument shall be put within the structure, and that it shall be inserted for the immediate purpose of committing the felony or aiding in its commission, and not merely for the purpose of making an opening to admit the hand or body, or, in other words, for the sole purpose of breaking.*

*Id.* (emphasis added).

Section 22(c) has been cited to reverse burglary convictions under a variety of circumstances. *See e.g., Johnston v. State,* 615 So.2d 1257 (Ala.1992)(automobile used to break down door to retail store); *State v. Johnson,* 587 S.W.2d 636 (Mo.1979)(screwdriver used to dig hole through back door of residence); *People v. Davis,* 3 Ill.App.3d 738, 279 N.E.2d 179 (1972)(tire tool used to pound small hole in wall of appliance store).

now hold that the entry requirement of our criminal trespass statute is satisfied by insertion of an instrument which is held or manipulated by the defendant, or so closely associated with his body that it essentially becomes an extension thereof. In light of this holding, it is evident that appellant entered Mr. Ungaro's house by chopping a hole through his front door in an apparent attempt to gain access to the premises. The remaining element of criminal trespass, that appellant knows his entry was not authorized, clearly could be inferred from the circumstances of this case, and appellant does not contend otherwise. Having found appellant was properly convicted of criminal trespass.

Appellant also claims the evidence was insufficient to establish criminal conspiracy. 18 Pa.C.S. § 903 provides:

§ 903. Criminal conspiracy

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

Were we to apply the definition of "entry" suggested by section 22(c) in the instant case, we would be forced to conclude that appellant did not enter Mr. Ungaro's house, since it is unlikely that the screwdriver utilized to gain access was also intended, or would have been used, "for the immediate purpose" of committing a crime once appellant was inside the premises. However, as section 22(c) expressly provides, this definition of "entry" is to be applied in the realm of burglary, which necessarily requires that entry be achieved with intent to commit another crime on the premises. Our thorough review of decisions from other jurisdictions indicates that every case which has applied section 22(c), including those cited *supra*, has done so in the realm of burglary. Instantly, although the entry requirements of the two crimes are the same, we are concerned with criminal trespass, which does not require that another crime be intended at the time of entry. Thus, as to criminal trespass, it is irrelevant whether the instrument used to gain access to the premises is also intended or used to commit another crime. For this reason, we find the definition of entry suggested by section 22(c) inapposite, and we leave to an appropriate case consideration of whether the section applies to our burglary law.

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

Appellant claims he "was inappropriately convicted of conspiracy since there was no evidence that he had an agreement to commit a crime nor was there any evidence that a crime was committed." (Appellant's brief at 9.) Appellant is correct in asserting that a conspiracy conviction requires proof of an agreement. However, as we have repeatedly held:

It is equally plain that direct proof of such an agreement is rarely available, nor is it necessary. Thus, 'proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities'. . . . An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Commonwealth v. Grekis,* 411 Pa.Super. 494, 601 A.2d 1275, 1283 (1992), quoting *Commonwealth v. French,* 396 Pa.Super. 436, 440–441, 578 A.2d 1292, 1294 (1990). Here, the evidence established that the victim, a total stranger to appellant and Mr. Warren, heard a chopping noise at his door at approximately 12:35 a.m. When the police arrived only thirty seconds later, they observed appellant and his accomplice jump from the victim's porch to a porch next door. Both men stood together while appellant knocked on the door of the second house and then both men walked down the steps toward the sidewalk together. Upon the officer's approach, appellant's accomplice stated that *"we* are looking for *our* boy" (N.T., 3/10/95, p. 25; emphasis added). Appellant also stated that *"they* were looking for *their* boy" (N.T. at 37; emphasis added). Appellant's accomplice then attempted to flee and, after he was caught by the officers, stated that *"we* don't know why you are stopping *us"* (N.T. at 26–27; emphasis added). Thus, the evidence as believed by the trial court as finder of

fact established that appellant and his accomplice attempted to break into the victim's house together, fled together and offered a joint excuse for their presence. This evidence is clearly sufficient to support appellant's conviction for criminal conspiracy.

■ Next, appellant challenges his conviction for loitering under 18 Pa.C.S. § 5506, which provides:

### § 5506. Loitering and prowling at night time

Whoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other placed used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor of the third degree.

Appellant claims the Commonwealth failed to establish this offense because he "was not walking or behaving in a stealthy manner but was openly jumping over a rail and knocking on a door when the police arrived." (Appellant's brief at 12.) We reject appellant's claim that he "openly" jumped from a stranger's porch as the police arrived at 12:35 a.m. Instead, we find ample evidence from which the trial court could have concluded that appellant "at nighttime maliciously loiter[ed] or maliciously prowl[ed] around" Mr. Ungaro's residence.

■ Finally, appellant claims his conviction for criminal mischief is not supported by sufficient evidence. 18 Pa.C.S. § 3304 provides:

### § 3304. Criminal mischief

(a) **Offense defined.**—A person is guilty of criminal mischief if he:

. . . . .

(2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property[.]

Appellant claims there is no evidence linking him either to the screwdriver or to the damage on the victim's door. This claim also fails. Again, the evidence as apparently believed by the trial court as finder of fact established that the victim heard chopping at his front door and the police arrived almost

immediately and observed appellant and his accomplice standing at the victim's door. No one else was present and after the men jumped to the adjoining porch, the officers found the screwdriver and the damage to the victim's door. The victim testified that his door was not damaged prior to the events in question (N.T. at 17–21).[7] This evidence was clearly sufficient to support the conclusion that appellant "intentionally or recklessly tamper[ed] with tangible property of another so as to endanger person or property". Section 3304(a)(2).

■ In regard to this claim, appellant also argues the court improperly graded his conviction for criminal mischief as a misdemeanor of the second degree since damage to the victim's door did not exceed $500. Section 3304(b) provides:

**(b) Grading.**—Criminal mischief is a . . . misdemeanor of the third degree if [the actor] intentionally or recklessly causes pecuniary loss in excess of $500. Otherwise criminal mischief is a summary offense.

Appellant is correct in this contention. Mr. Ungaro's preliminary hearing testimony, which was introduced at trial, reveals the following:

Q. [DISTRICT ATTORNEY]: How much is it going to cost you? What was the amount of the damage?

A. It's about $300, because I am getting a metal door.

(N.T. at 20.) Thus, appellant's conviction for criminal mischief should have been graded as a summary offense, rather than as a second degree misdemeanor. However, since appellant received no additional sentence on the criminal mischief conviction he is entitled to no relief. See *Commonwealth v. Ford–Bey,* 504 Pa. 284, n. 5, 472 A.2d 1062, 1065 n. 5 (1984) (appellant's claim that he should not have been convicted of both attempted murder and recklessly endangering another person is wholly frivolous in view of the fact that no sentence was imposed for reckless endangerment); *Commonwealth v. Nelson,* 337 Pa.Super. 292, 486 A.2d 1340 (1984) (since an

7. Although the victim was deceased by the time of trial, his preliminary hearing testimony was introduced in support of the Commonwealth's case.

appeal is taken from the judgment of sentence and not conviction, arguments concerning convictions for which no sentence was imposed are frivolous).

Having rejected appellant's claims that the evidence was insufficient to support each of his convictions, we affirm the June 22, 1995 judgment of sentence.

Judgment of sentence affirmed.