J-A29031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHIRI KASHIER SPAIN | : | |
| | : | |
| Appellant | : | No. 122 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 19, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001786-2019

BEFORE: DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED DECEMBER 24, 2020**

Appellant, Khiri Kashier Spain, appeals from the aggregate judgment of sentence of six to twenty years of confinement, which was imposed after his jury trial convictions for: burglary – building or occupied structure, or separately secured or occupied portion thereof, that is not adapted for overnight accommodations in which at the time of the offense no person is present; theft by unlawful taking or disposition – movable property; receiving stolen property; loitering and prowling at night time; and criminal trespass – enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure.[1]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3502(a)(4), 3921(a), 3925(a), 5506, and 3503(a)(1)(i), respectively.

The facts underlying this appeal are as follows. On September 30, 2018, at about 2:30 A.M., Officer Matthew Nguyen of the West Reading Police Department was on bicycle patrol when he observed a man peering into multiple vehicles. N.T. Trial at 160, 162-63. After calling the suspicious behavior in to his supervisor, Officer Nguyen observed the man cutting through backyards headed towards Wyomissing, Berks County. *Id.* at 166-67. When another officer attempted to make contact with the man, he fled through the backyards towards Wyomissing. *Id.* at 167.

Police later recovered a cellular telephone laying in the one in of yards. *Id.* at 180. A search warrant was obtained for the cell phone, *id.* at 188, and police discovered photographs of Appellant and a Facebook account in his name on the phone. *Id.* at 190-91.

At 7:00 A.M. that same day, Kristine Seibert awoke in her home in Wyomissing, blocks away from where Officer Nguyen had seen Appellant, and discovered that all her kitchen cabinets were open and ransacked. *Id.* at 100-02, 132, 162-64, 169. A jar of change was missing from the kitchen, as was an iPad and a Bluetooth speaker. *Id.* at 107-09. Ms. Seibert called for her husband, who had gone to sleep after her and had been awake until around 1:00 A.M. *Id.* at 102, 127. When he came downstairs, he noticed that the doors to their yard were ajar, even though they had been closed when he went to bed; the yard leads to their detached garage. *Id.* at 102, 106-07. When they entered the garage, they saw that Ms. Seibert's bicycle was missing; it had been strapped to their car, since they had been out cycling the

- 2 -

day before. *Id.* at 114-15. Police later collected DNA evidence from the straps, and, at trial, an expert forensic scientist testified that "the probability of randomly selecting an unrelated individual exhibiting this combination of DNA types is approximately 1 in 370 sextillion from the Caucasian population[,] 1 in 7.8 sextillion from the African American population[,] and 1 in 89 sextillion from the Hispanic population." *Id.* at 281. The expert further testified that DNA transfer was improbable, as this sample was not a mixture of DNA from multiple people. *Id.* at 289, 291. The Seiberts also found that Mr. Seibert's backpack was missing and that a fire-proof box in their basement had been rummaged through, although nothing was gone from the box. *Id.* at 102, 106, 111, 132. Neither of the Seiberts knew Appellant and did not give him permission to be in their garage or home. *Id.* at 124, 133-34.

Detective Kevin Quinter of the Borough of Wyomissing Police Department received a notice that the Seiberts' stolen iPad was sold at a kiosk at the Walmart in Wyomissing. *Id.* at 202. The seller was identified as Raymeesha Leatherbury. *Id.* at 203-04. Camera footage from the kiosk revealed that Appellant was in the store with Leatherbury at the time of the sale. *Id.* at 204. Leatherbury later testified that Appellant had given her the iPad, but she "didn't know where it came from." *Id.* at 233. She stated that he had asked her to sell it, because he did not have the requisite identification to hawk it at the Walmart kiosk. *Id.* at 234, 245. She agreed, because she was homeless at the time and needed money for a hotel room. *Id.* at 231, 233-34. Leatherbury had initially been reluctant to talk to police since she

was "ashamed" and "scared" and "didn't want to be labeled as a snitch[.]" *Id.* at 232, 238, 248. She informed the jury that she was never charged with receiving stolen property or any crime related to the burglary at issue and was never asked for a DNA sample by police during their investigation. *Id.* at 246-47.

Appellant testified in his own defense at trial, during which he admitted to being in the neighborhood where the crime occurred at approximately 2:00 A.M. on September 30, 2018, and that the cell phone found by police in the area that night belonged to him. *Id.* at 311-12, 319.

The jury convicted Appellant of the aforementioned charges, including burglary of the garage. However, the jury found him not guilty of burglary of the Seiberts' house.[2]

On December 19, 2019, the trial court sentenced Appellant to: three to ten years of confinement for burglary; 18 months to five years of confinement for receiving stolen property; three to twelve months of confinement for loitering and prowling at night time; and 18 months to five years of confinement for criminal trespass. He received no punishment for theft by unlawful taking or disposition. His sentences for burglary, receiving stolen property, and criminal trespass are to be served consecutively to each other;

---

[2] *Id.* § 3502(a)(1)(ii) ("A person commits the offense of burglary if, with the intent to commit a crime therein, the person . . . enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present").

his sentence for loitering and prowling at night time is to be served concurrently. Consequently, his aggregate judgment of sentence is six to twenty years of confinement.

On December 30, 2019, Appellant filed timely post-sentence motions, including a motion for new trial on the basis that the verdicts were against the weight of the evidence and a motion to modify sentence. The latter motion stated, in its entirety:

> 9. Defendant avers that the total aggregate sentence imposed is excessive.
>
> 10. Defendant avers that this [c]ourt abused its discretion by sentencing Defendant to **consecutive** sentences at the top of the standard range on three counts. The sentence is a greater period of confinement than that which was consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of Defendant.
>
> 11. In reconsidering the sentence imposed, Defendant asks that the [c]ourt consider the mitigating factors:
>
> > a. Defendant's largely untreated history of mental health and drug addiction beginning as a child and adolescent;
> >
> > b. Defendant's ability to obtain meaningful employment when not incarcerated;
> >
> > c. Defendant's attempt to better himself by pursuing higher education with hopeful future business plans;
> >
> > d. Defendant's relationship with his 1 year old child now and in the future; and
> >
> > e. Defendant's overall life circumstances which have shaped his past criminal infractions.
>
> **WHEREFORE**, Defendant respectfully requests that the Honorable Court grant this motion and modify the sentence imposed.

Post Sentence Motions, 12/30/2019, at 2-3 (not paginated) ¶¶ 9-11 (emphasis in original). After the trial court denied these motions on January 3, 2020, Appellant filed this timely direct appeal on January 15, 2020.[3]

On July 9, 2020, Appellant filed his brief with this Court. On July 29, 2020, Appellant filed an application for remand to file a supplemental post-sentence motion or, in the alternative, to file a supplemental appellate brief. *See* Pa.R.A.P. 2113(c) ("No further briefs may be filed except with leave of court.").[4] On August 3, 2020, this Court denied the application for remand but granted the application to file a supplemental brief. On August 6, 2020, Appellant filed his supplemental brief.

In his main brief to this Court, Appellant presents the following issues for our review:

> Whether the guilty verdicts were supported by the weight of the evidence?
>
> Whether the evidence was sufficient to support the verdict of Burglary?
>
> Whether the evidence was sufficient to support the verdict of Criminal Trespass?

---

[3] Appellant contemporaneously filed his statement of errors complained of on appeal. The trial court entered its opinion on June 10, 2020.

[4] The Commonwealth had not yet filed its brief and would not do so until September 2, 2020. Thus, Appellant's brief was not a reply brief. *See* Pa.R.A.P. 2113(a) ("the appellant may file a brief in reply to matters raised by appellee's brief . . . and not previously addressed in appellant's brief").

Whether the evidence was sufficient to support the verdict of Theft by Unlawful Taking?

Whether the evidence was sufficient to support the verdict of Receiving Stolen Property?

Whether the evidence was sufficient to support the verdict of Loitering and Prowling at Night Time?

Whether the trial court abused its discretion by sentencing [Appellant] to consecutive sentences at the top of the standard range on three counts.

Appellant's Brief at 15-16 (suggested answers and trial court's answers omitted).

Appellant's supplemental appellate brief does not include a statement of questions involved pursuant to Pa.R.A.P. 2116 but raises "[a] claim that the sentencing court misapplied the sentencing guidelines[.]" Appellant's Supplemental Brief at 2.

**Weight of the Evidence**

Appellant first contends that the verdicts were against the weight of the evidence, Appellant's Brief at 33, "because the evidence supported the conclusion that other individuals, never pursued by law enforcement, were likelier to have committed the alleged crimes." *Id.* at 34. He accuses Leatherbury as a potential perpetrator. *Id.* (citing N.T. Trial at 204).

When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion. A reversal of a verdict is not necessary unless it is so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. The fact-finder also has the responsibility of resolving contradictory testimony and questions of credibility. We give great deference to the trial court's decision regarding a weight of

> the evidence claim because it had the opportunity to hear and see the evidence presented.

***Commonwealth v. Roane***, 204 A.3d 998, 1001 (Pa. Super. 2019) (internal citations and quotation marks omitted).

Appellant challenges Leatherbury's credibility and notes inconsistencies in her statements to police and trial testimony. Appellant's Brief at 34-35 (citing N.T. Trial at 204, 233-34, 245-47). However, Leatherbury explained that her statements had been inconsistent, because she was ashamed and afraid of being labelled a "snitch." N.T. Trial at 232, 238, 248. In any event, such concerns are the prerogative of the jury, as fact-finder, to resolve. ***Roane***, 204 A.3d at 1001. The jurors were also made aware that Leatherbury had not been charged with any crimes related to the burglary and that police had never taken her DNA to test during this investigation, and they considered these facts accordingly. N.T. Trial at 246-47. Thus, Appellant's challenge to the weight of the evidence fails.

### Sufficiency of the Evidence

Next, Appellant challenges the sufficiency of the evidence to support all his convictions.

> This Court's standard for reviewing sufficiency of the evidence claims is as follows:
>
> > We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> ***Commonwealth v. Rodriguez***, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting ***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa.Super. 2012)).

***Commonwealth v. Izurieta***, 171 A.3d 803, 806 (Pa. Super. 2017) (internal brackets omitted).

### *Burglary*

Appellant begins by challenging the sufficiency of the evidence to support his conviction for burglary. Appellant's Brief at 37. He was convicted of burglary pursuant to 18 Pa.C.S. § 3502(a)(4):

> A person commits the offense of burglary if, **with the intent to commit a crime therein**, the person . . . enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.

***Id.*** (emphasis added).

Appellant argues that "[t]here was no evidence that [he] entered the Seibert[s'] garage with the intent to commit a crime therein. The specific intent requirement of burglary cannot be inferred solely from the *actus reus* of entering." Appellant's Brief at 38. He largely relies on ***Commonwealth v. Crowson***, 405 A.2d 1295 (Pa. Super. 1979), maintaining that "that the fact

that the defendant committed a crime within the structure was insufficient to prove his intent to commit a crime at the time of the entry." Appellant's Brief at 38 (citing *Crowson*, 405 A.2d at 1297).

However, the facts in the current action are distinguishable from those of *Crowson*. In *Crowson*, 405 A.2d at 1296-97, this Court found the record to be bereft of facts establishing intent:

> [T]here is no evidence that appellant entered the Harris residence surreptitiously or by force. In fact, there is no evidence at all regarding the manner of entry by appellant. We know nothing about the circumstances regarding appellant's entry. . . . Because there is no evidence from which it may be inferred that appellant entered the Harris residence with the intent to commit a crime therein, the evidence is insufficient to sustain the burglary conviction.

By contrast, in the current appeal, there was evidence from which it may be inferred that Appellant entered the Seiberts' home with the intent to commit a crime therein. *See id.* First, Appellant's entry occurred between 1:00 A.M. and 7:00 A.M., when the Seiberts were asleep. N.T. Trial at 101, 127. Additionally, the Seiberts did not know Appellant nor did they allow him into their home or garage. *Id.* at 124, 133-34. Also, Appellant's entry was so quiet that he did not wake either of the sleeping residents, and he proceeded to rummage through cabinets and a fire-proof box. *Id.* at 101-02, 111, 127, 132. Finally, he had been seen exhibiting suspicious behavior nearby that night – *i.e.,* looking into multiple vehicles – until he was interrupted by police and fled in the direction of the Seiberts' residence *Id.* at 160, 162-63, 166-67.

All of this evidence and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, *Izurieta*, 171 A.3d at 806, support the conclusion that Appellant had intended to commit a crime that night and had no reason to be in the Seiberts' house in the middle of the night other than to commit a crime. *See* N.T. Trial at 101-02, 111, 124, 127, 132-34, 160, 162-63, 166-67. Consequently, the Commonwealth established that he entered the building with the intent to commit a crime therein and thus presented sufficient evidence to support Appellant's burglary conviction. 18 Pa.C.S. § 3502(a)(4).[5]

### *Criminal Trespass*

Next, Appellant challenges the sufficiency of the evidence to establish his conviction for criminal trespass, urging this Court to find that "the Commonwealth failed to prove Appellant entered the Seibert[s'] home[.]" Appellant's Brief at 42-43.

Appellant was convicted of criminal trespass pursuant to 18 Pa.C.S. § 3503(a)(1)(i): "A person commits an offense if, knowing that he is not licensed or privileged to do so, he . . . enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]"

---

[5] To the extent that Appellant also challenges the sufficiency of the evidence to establish that he entered the building, Appellant's Brief at 39, proof of entry is discussed in more detail herein pursuant to his challenge to the sufficiency of the evidence to establish criminal trespass.

In the current case, there was sufficient evidence to enable the trier of fact to find the element of entry was established beyond a reasonable doubt. *Id.*; *Izurieta*, 171 A.3d at 806. The discovery of Appellant's phone and his own admission establish that he was in the area of the Seiberts' residence in the early morning hours of September 30, 2018. N.T. Trial at 180, 190-91, 311-12, 319. His DNA was found on the bike straps that attached Ms. Seibert's bicycle to the Seiberts' automobile. *Id.* at 114-15, 281, 289, 291. Other than Appellant being in the garage and touching those straps to remove the bicycle, there is no legitimate reason why Appellant's DNA would be on those straps, and the forensic expert stated that DNA transfer was highly unlikely. *Id.* at 281, 289, 290. In addition, although the jury did not convict Appellant of burglary of the Seiberts' residence, this verdict is irrelevant to the jury's determination that Appellant had entered the Seiberts' garage. For these reasons, the sufficiency of the evidence claim must fail. *Izurieta*, 171 A.3d at 806.

<u>*Theft by Unlawful Taking or Disposition*</u>

Appellant likewise challenges the sufficiency of the evidence to establish his conviction for theft by unlawful taking or disposition, Appellant's Brief at 43, maintaining that "[t]he Commonwealth failed to present sufficient evidence that [he] took any property from the Seiberts." *Id.* at 45.

Appellant was convicted of theft by unlawful taking or disposition pursuant to 18 Pa.C.S. § 3921(a): "A person is guilty of theft if he unlawfully

**takes, or exercises unlawful control over,** movable property of another with intent to deprive him thereof." ***Id.*** (emphasis added).

Preliminarily, we note that the Commonwealth does not need to establish that Appellant directly took the property, only that he "exercises unlawful control over" it. ***Compare*** Appellant's Brief at 45 ***with*** 18 Pa.C.S. § 3921(a).

Appellant was observed on camera at Walmart with Leatherbury while she was in possession of the iPad; Leatherbury testified that the iPad was not hers but that Appellant had merely handed her the iPad to sell, as he lacked the required identification to make the transaction. N.T. Trial at 204, 233-34, 245. Ergo, Appellant exercised unlawful control over the iPad.

Furthermore, the cases cited by Appellant in his brief are inapposite. Appellant references three cases:

> In ***Commw***[***ealth***] ***v. Keller***, 378 A.2d 347, 349 (Pa. Super 1977) Appellant and two others were standing near a coin box and a laundry machine. When the complainant arrived, Appellant and the others jumped into a car and left the scene. ***Id.*** The complainant then saw that the coin box was damaged, and the coin box was missing from one of the cleaners. ***Id.*** However, the court has repeatedly stated that mere presence of an individual at the scene of a crime is not a sufficient circumstance upon which guilt may be predicated. ***Id.*** The Superior Court reversed the conviction because no evidence was introduced to show that the appellant had tampered with the coin boxes or taken anything from them. ***Id.*** at 349-350.
>
> In ***Commw***[***ealth***] ***v. Roach***, 393 A.2d 1253 (Pa. Super. 1977), the Superior Court vacated a conviction when there was circumstantial evidence that left open a significant possibility that a gun-rack had been stolen not by defendant but by an unknown person who broke into an apartment. ***Id.*** at 1256. The court

stated that the evidence was therefore insufficient to support conviction of theft by unlawful taking. *Id.*

In *Interest of J.B.*, 189 A.3d 390, 421 (Pa. 2018) the Supreme Court stated that there was a reasonable inference that defendant was not the person . . . who fired the lethal shotgun blast which killed the victim and it could have been in fact another unknown person.

Appellant's Brief at 43-44.

We note that the appellant in *In re J.B.*, 189 A.3d 390 (Pa. 2018), was not charged with theft by unlawful taking or disposition, so that case is of limited value. Assuming that we can use it as guidance, we note that --

the trial evidence [in *J.B.*] equally supported two reasonable but diametrically opposed ultimate inferences: one that the defendant committed the murder, and the second that he did not commit the murder. . . . [I]n those atypical situations, our [Supreme] Court has consistently held that we are not bound by the factual findings and credibility determinations rendered by the finder of fact, and we are compelled in such circumstances to reverse a legally erroneous conviction.

*Id.* at 409. Nonetheless, we discern no support in the case at bar for competing reasonable but diametrically opposed ultimate inferences, nor does Appellant articulate what these diametrically opposed ultimate inferences could be.

As for the remaining two cases, Appellant similarly fails to explain how they are analogous to his situation; simply because circumstantial evidence was found to be insufficient in these cases does not automatically mean that circumstantial evidence is always insufficient. *See Commonwealth v. Quel*, 27 A.3d 1033 (Pa. Super. 2011) (circumstantial evidence was sufficient to support conviction for theft by unlawful taking or disposition of movable

property); *see also Izurieta*, 171 A.3d at 806 ("Commonwealth's burden may be met by wholly circumstantial evidence").

As discussed above, the evidence established more than Appellant's mere presence at the scene of the crime. *See Commonwealth v. Hanes*, 522 A.2d 622, 624 (Pa. Super. 1987) (finding *Commonwealth v. Keller*, 378 A.2d 347 (Pa. Super 1977), which had been cited by the appellant, to be inapposite, where "[t]he evidence (viewed in the light most favorable to the Commonwealth as the verdict winner), and the reasonable inferences deducible therefrom, established more than appellant's mere presence at the scene of the crime"). Instead, Appellant's "exercise[ of] unlawful control over" the iPad, 18 Pa.C.S. § 3921(a), was established through Leatherbury's direct testimony that Appellant gave her the iPad to sell, N.T. Trial at 233, not merely through circumstantial evidence and inferences – and the jury, as fact-finder, was free to believe all, part, or none of the evidence presented. *Izurieta*, 171 A.3d at 806.

For these reasons, Appellant's challenge to the sufficiency of the evidence to establish his conviction for theft by unlawful taking or disposition is meritless. *See* Appellant's Brief at 43-46.

*Receiving Stolen Property*

Appellant's next argument is, in its entirety:

Commonwealth must establish, beyond a reasonable doubt, that Appellant received or retained the moveable property of another knowing that it had been stolen or believing that it had probably been stolen. 18 Pa.C.S. § 3925(a).

- 15 -

> The Commonwealth failed to present sufficient evidence that Appellant ever received or retained any of the Seiberts' property, as discussed fully above.

Appellant's Brief at 47.

Appellant provides no citations to case law or to any other supporting authority for this issue; his claim is thus waived. *See Kelly v. The Carman Corporation*, 229 A.3d 634, 656 (Pa. Super. 2020) (citing Pa.R.A.P. 2119(a) (argument shall include citation of authorities); *see also, e.g.*, *Commonwealth v. Spotz*, 18 A.3d 244, 281 n.21 (Pa. 2011) (without a "developed, reasoned, supported, or even intelligible argument[, t]he matter is waived for lack of development"); *In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) ("The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities[; t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority" (internal citations and quotation marks omitted)); *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (explaining appellant's arguments must adhere to rules of appellate procedure, and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention).[6]

---

[6] To the extent that this issue is preserved, it would fail for the same reasons that Appellant's other sufficiency claims, discussed above, have failed.

- 16 -

*Loitering and Prowling at Night Time*

Appellant's final sufficiency claim challenges the evidence to establish his conviction for loitering and prowling at night time. Appellant's Brief at 47. He asserts that "[t]he Commonwealth failed to present sufficient evidence that [he] loitered or prowled around the Seibert[s'] home" – "[i]n fact, the officers testified that Appellant ran away from them in the area of [the] Seibert[s'] home." *Id.* at 48. He continues that the Commonwealth also failed to establish that he "had any intent to do a wrongful act." *Id.*

Appellant was convicted of loitering and prowling at night time (hereinafter, "Loitering") pursuant to 18 Pa.C.S. § 5506: "Whoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor of the third degree." This Court also has defined several terms in Section 5506 as follows:

> "Malicious", as used in the instant statute, means an intent to do a wrongful act or having as its purpose injury to the privacy, person, or property of another. . . . To "loiter" is "to stand around or move slowly about; to spend time idly; to saunter; to delay; to linger; to lag behind". To "prowl" is "to rove or wander over in a stealthy manner; to pace or roam furtively".

*Commonwealth v. Belz*, 441 A.2d 410, 411 (Pa. Super. 1982) (quoting *Commonwealth v. DeWan*, 124 A.2d 139 (Pa. Super. 1956)).

In *Commonwealth v. Giddings*, 686 A.2d 6 (Pa. Super. 1996), *overruled on other grounds by Commonwealth v. Clark*, 746 A.2d 1128 (Pa. Super. 2000) (*en banc*), this Court concluded that evidence was sufficient to

support a conviction for Loitering, despite Appellant's claim that he openly jumped from the victim's porch as police arrived. Accordingly, Appellant's assertion that he "ran away from [officers] in the area of" the victims' home does not negate the possibility that he could have been loitering and prowling prior to being confronted by police. **Compare** Appellant's Brief at 48 **and** N.T. Trial at 167 **with Giddings**, 686 A.2d 6.

Moreover, in **Commonwealth v. Melnyczenko**, 619 A.2d 719, 720, 722 (Pa. Super. 1992), the requisite "maliciousness" to establish Loitering was proven by the testimony of a trooper who had witnessed that the appellant, Peter Melnyczenko, had "walked" "very cautiously" "through the back yards of four or five houses for approximately six or seven minutes." This evidence of Melnyczenko "wandering through the yards in a stealthy manner . . . support[ed] the conclusion that appellant was reconnoitering the area with the intent to commit a burglary." **Id.** at 722. In the current action, a police officer witnessed Appellant looking into many vehicles then moving through the backyards of multiple houses. N.T. Trial at 160, 162-63, 166-67. The officer's testimony about Appellant's suspicious behavior of peering into many vehicles is analogous to the trooper's testimony about Melnyczenko's "very cautious[]" behavior. **Compare id.** at 160, 162-63 **with Melnyczenko**, 619 A.2d at 722. More importantly, the officer's testimony about Appellant moving through the backyards of numerous houses parallels the trooper's testimony that Melnyczenko walked through the backyards of numerous houses for several minutes. **Compare** N.T. Trial at 166-67 **with Melnyczenko**, 610

A.2d at 722. As the evidence in **Melnyczenko**, 610 A.2d at 722, was sufficient to establish the element of maliciousness for Loitering, similar evidence in the current appeal is also sufficient to establish the element of maliciousness, thereby contradicting Appellant's allegation that the Commonwealth failed to establish that he "had any intent to do a wrongful act." Appellant's Brief at 48.

We also compare the current case to **Commonwealth v. Williams**, 574 A.2d 1161, 1165 (Pa. Super. 1990), in which this Court again considered whether the evidence presented in the matter was sufficient to establish Loitering.

> [The a]ppellant argue[d] that he did not loiter "around" the apartment building; he emphasize[d] that his activities took place in the parking lot outside the apartment building and were directed at cars in the parking lot rather than at specific rental units. However, in **Commonwealth v. Duncan**, 456 Pa. 495, 321 A.2d 917 (1974), the Pennsylvania Supreme Court broadly defined the word "around" as used in section 5506 as meaning "in the vicinity or neighborhood." **Id.** at 499, 321 A.2d at 919.[7] The Court further noted that the purpose of section 5506 was to "alleviate the danger to human life and quiet enjoyment of one's dwelling which is presented by the nighttime loitering or prowling of malicious-minded individuals." **Id**. at 499, 321 A.2d at 919. [The a]ppellant clearly violated both the letter and the spirit of the statute by entering and lurking inside a car owned by a resident of the apartment house that was parked about thirty-five feet away from the apartment house in a lot designed for use by the tenants.

---

[7] Hence, the Commonwealth did not even need to establish that Appellant was immediately outside the Seiberts' home in order for him to be convicted of Loitering; he merely could have been in the *environs*.

*Id.* In the instant action, Appellant comparably "violated both the letter and the spirit" of the Loitering statute, *id.*, by peering into strangers' vehicles, wandering through neighborhood backyards, and lurking in the Seiberts' garage and yard. N.T. Trial at 102, 106-07, 114-15, 160, 162-63, 166-67, 180, 281, 289, 291.

Thus, pursuant to **Giddings**, 686 A.2d 6, **Melnyczenko**, 619 A.2d at 720, 722, and **Williams**, 574 A.2d at 1165, the Commonwealth presented sufficient evidence to establish that Appellant committed Loitering. Accordingly, Appellant's final sufficient challenge is also meritless.

## Sentencing

The last issue in Appellant's initial appellate brief is a challenge to the discretionary aspects of his sentence. Appellant's Brief at 49.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Manivannan**, 186 A.3d 472, 489 (Pa. Super. 2018) (quotation marks and some citations omitted), *reargument denied* (July 7, 2018).

- 20 -

In the current case, Appellant filed a timely notice of appeal and preserved his issue in a post-sentence motion, and his brief contains a statement pursuant to Pa.R.A.P. 2119(f) ("Rule 2119(f) Statement"). Appellant's Brief at 31-33. The final requirement, whether the question raised by Appellant is a substantial question meriting our discretionary review, "must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Manivannan*, 186 A.3d at 489 (quotation marks and some citations omitted).

According to the Rule 2119(f) Statement, "[t]he sentencing court imposed a sentence on Appellant that was in the top of the standard range and run consecutively" and "did not adequately consider Appellant's mental health, dire financial situation, current family situation or future plans." Appellant's Brief at 32-33.

We stated in *Commonwealth v. Dodge*, 77 A.3d 1263 (Pa. Super. 2013):

> To make it clear, a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Id.* at 1270 (emphasis in original). Appellant does not contend that the imposition of consecutive sentences within the guideline range is clearly unreasonable. **See** Appellant's Brief at 32. Accordingly, his argument that the trial court abused its discretion due to the consecutive nature of his sentence does not raise a substantial question. **Dodge**, 77 A.3d at 1270.

Additionally, this Court has held that a claim of inadequate consideration of mental health issues does not raise a substantial question. **Commonwealth v. Haynes**, 125 A.3d 800, 807 (Pa. Super. 2015) (citing **Commonwealth v. Cannon**, 954 A.2d 1222, 1229 (Pa. Super. 2008)). Appellant does not allege that the trial court was unaware of his mental health issues. Consequently, this claim likewise fails to present a substantial question for our review.

Appellant's argument that the trial court failed to consider his other individual family and financial needs similarly fails to raise a substantial question. **See Commonwealth v. Ladamus**, 896 A.2d 592, 596 (Pa. Super. 2006) (appellant's argument that the trial court did not consider his status as the primary caregiver for his mother did not raise a substantial question); **Commonwealth v. Kraft**, 737 A.2d 755, 757 (Pa. Super. 1999) (appellant's argument that "the sentencing court did not adequately consider her personal life situation as a grandmother who has to provide care for a small child" did not raise a substantial question such as to permit appellate review of the discretionary aspects of her sentence).

Moreover, although the Rule 2119(f) Statement does not specify what Appellant's "future plans" may be, Appellant's Brief at 33, we believe that such an assertion would also be considered a "personal life situation[.]" *Kraft*, 737 A.2d at 757.[8] The trial court's alleged failure to consider these future plans consequently would not raise a substantial question such as to permit our review of the discretionary aspects of Appellant's sentence. *Id.*

Thus, Appellant's initial brief has failed to "advance[] a colorable argument" that a substantial question exists and hence failed to preserve any of the challenges to the discretionary aspects of his sentence raised therein. *Manivannan*, 186 A.3d at 489.

The new challenge raised in Appellant's supplemental brief is that the trial court miscalculated his prior record score ("PRS"). Appellant's Supplemental Brief at 3-4. The Commonwealth does not oppose vacating Appellant's judgment of sentence, due to this incorrect PRS, and remanding for resentencing. Commonwealth's Brief at 20. However, we cannot reach this claim.

Preliminarily, we note that Appellant did not include a statement of questions involved pursuant to Pa.R.A.P. 2116 in his supplemental brief. We could find his novel claim raised therein waived for this reason alone.

---

[8] "[W]e cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Diehl*, 140 A.3d 34, 45 (Pa. Super. 2016). Thus, we cannot look at Appellant's post-sentence motion or the argument sections of his initial appellate brief to provide us with more details about his future plans.

Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

More importantly, a challenge to the calculation of a PRS is a challenge to the discretionary aspects of sentencing, not the legality of the sentence. **See Commonwealth v. Medley**, 725 A.2d 1225, 1228 (Pa. Super. 1999) ("[a]ppellant's claim that the lower court erred when calculating his prior record score presents a substantial question that the lower court abused its discretion at the time of sentencing"); **see also Commonwealth v. Cook**, 941 A.2d 7, 11 (Pa. Super. 2007) ("A claim that the sentencing court misapplied the Sentencing Guidelines presents a substantial question."); **cf. Commonwealth v. Archer**, 722 A.2d 203, 211 (Pa. Super. 1998) (allegation that trial court miscalculated offense gravity score presents a "legal question," not appealable as of right, but appealable because it raises a substantial question regarding the discretionary aspects of sentence). Thus, Appellant would have had to have raised the claim before the trial court in order to preserve it, which he did not do. **Manivannan**, 186 A.3d at 489 (in order to reach the merits of a discretionary issue, this Court must first determine, *inter alia*, "whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720"); **see** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Post Sentence Motions, 12/30/2019, at 2-3

¶¶ 9-11.[9]  Accordingly, Appellant's sentencing claim based upon a challenge to his PRS was waived, and we cannot reach it in this appeal.

\* \* \*

Based on the foregoing, Appellant is not entitled to relief.  We therefore affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2020

---

[9] In addition, as a challenge to a PRS is a challenge to the discretionary aspects of sentencing and not to the legality of the sentence, we cannot raise the issue *sua sponte*, either.  **See Commonwealth v. Randal**, 837 A.2d 1211, 1214 (Pa. Super. 2003) (*en banc*) ("challenges to an illegal sentence can never be waived and may be reviewed *sua sponte* by this Court" (some formatting)).